Roderick A. McGARRY

v.

Marilyn PIELECH, et al.

No. 2010–386–Appeal.

Supreme Court of Rhode Island.

July 6, 2012.

Robinson, J., filed opinion concurring in part and dissenting in part.

William T. Murphy, Esq., for Plaintiff.

Marc DeSisto, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on March 6, 2012, on appeal by the plaintiff, Roderick A. McGarry (plaintiff or McGarry), from a final judgment in favor of the defendant, the Town of Cumberland School Department (defendant or school department), granting the defendant's motion for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure, based on the trial justice's conclusion that the plaintiff failed to present sufficient evidence that the defendant had discriminated against the plaintiff on the basis of his age.[1] In February 2010, a jury trial commenced on the plaintiff's claims of age discrimination and retaliation; the jury returned a verdict in the plaintiff's favor. However, after trial, the trial justice granted a motion for judgment as a matter of law on both claims and, in the alternative, granted the defendant's motion for a new trial.

On appeal to this Court, plaintiff assigns error to the trial justice's posttrial Rule 50 ruling and argues that the jury verdict should be reinstated. Specifically, plaintiff contends that the trial justice erred by granting judgment as a matter of law because (1) defendant failed to offer a nondiscriminatory reason for not hiring plaintiff; and (2) the trial justice erred in ruling that an adverse inference resulting from the spoliation of evidence, without additional extrinsic evidence, cannot satisfy plaintiff's burden of proof—and, notwithstanding the foregoing, plaintiff contends that he did present such extrinsic evidence. The plaintiff also assigns error to the trial justice's alternative decision granting defendant's motion for a new trial. For the reasons stated herein, we reverse in part and affirm in part the judgment of the Superior Court, and remand the case for a new trial.

### Facts and Travel

The underlying facts that gave rise to this case began well over a decade ago, when McGarry applied for a series of open teaching positions in the Cumberland school system. During the 1997–1998 school year, plaintiff worked as a substitute teacher in Cumberland. In July 1998, having just received his certification to teach English, plaintiff applied for two open teaching positions at Cumberland Middle School: one as a full-time English teacher, and one as a part-time English teacher. McGarry was interviewed for both positions, but, ultimately, he was not selected. In December 1998, McGarry— who was then fifty-six years old—filed a formal charge with the Rhode Island Com-

---

1. The plaintiff sued Marilyn Pielech in her capacity as treasurer and finance director of the Town of Cumberland, and he sued several members of the Cumberland School Commit- tee in their official capacities. For ease of reference, we refer to the defendants simply as "defendant" or "school department."

mission for Human Rights (Commission)[2] alleging that the Cumberland school department's decision not to hire him was the result of age discrimination.[3] Subsequently, in the spring of 1999, plaintiff applied and was interviewed for a third teaching position at Cumberland Middle School, this time as an English/Social Studies teacher. The plaintiff was not hired for that position, either.

On August 8, 2000, after obtaining a right to sue letter from the Commission in accordance with G.L.1956 § 28-5-24.1(a), plaintiff filed suit against the school department, invoking the Rhode Island Civil Rights Act and the Rhode Island Fair Employment Practices Act. McGarry alleged that he was the victim of age discrimination based on the failure of the school department to hire him for either of the two open teaching positions in 1998, or for the English/Social Studies teaching position in 1999.[4]

A jury trial commenced in February 2010. The plaintiff testified about his education and work history and stated that in 1968 he earned an undergraduate degree in economics, and later an MBA degree. McGarry stated that he worked as a teacher at Cumberland High School from 1969 to 1970, but left to work in the trucking industry—a more lucrative field—where he remained for twenty-six years until he reactivated his teaching certificates in 1996. In 1997, plaintiff began substitute teaching in the Cumberland school system. The plaintiff testified that upon learning of a probable teaching vacancy in Cumberland Middle School's English Department for the 1998–1999 school year, he enrolled in two English courses, and in July 1998, he obtained a certificate to teach English.[5]

The plaintiff described the hiring process, beginning in July 1998, for a full-time and a part-time teaching position at Cumberland Middle School. He was interviewed for both positions by a committee consisting of the school principal, Joyce Hindle–Koutsogiane (Koutsogiane), and two English teachers from the middle school. The plaintiff testified that the interview was "pleasant" and that the questions posed to him were appropriate and generally pertained to "teaching philosophies." When questioned whether the interviewers took notes, McGarry indicated that although he "didn't see a lot of writing" during the interview, he was sure the panel did so after he left the interview.

In August, when McGarry learned that he had not been selected for either position, he sought access to his personnel file, and he discovered that the interview sheets were missing from his file. According to the record, the interview sheets

---

2. We note that the Commission filed a brief as *amicus curiae* on behalf of plaintiff. In its brief, the Commission argued that Rhode Island cases on spoliation do not explicitly require extrinsic evidence to accompany an adverse inference. We are grateful for the Commission's *amicus* brief.

3. On June 27, 2000, the Commission issued McGarry a notice of right to sue pursuant to G.L.1956 § 28-5-24.1(a).

4. McGarry's original complaint contained additional employment-related claims against the school department that were dismissed at summary judgment and are not relevant to this appeal. The plaintiff's claim regarding the English/Social Studies position for which he interviewed in 1999 was added in an amended complaint. The plaintiff additionally alleged, based on the Rhode Island Fair Employment Practices Act, that the school department had refused to offer him substitute teaching positions after the 1998–1999 school year in retaliation for having filed a complaint with the Commission. On appeal, plaintiff did not pursue his retaliation claim.

5. McGarry additionally held teaching certificates in social studies, history, economics, and social business education.

consist of prepared documents on which the interviewers take general handwritten notes about the candidate and rate—on a scale of one to five—the candidate's response to each of the eight questions posed by the interview committee. The interviewers also provide their overall ranking of a candidate on these interview documents. No explanation has been forthcoming about how or why these documents came to be missing.

McGarry testified that he believed that he was the victim of age discrimination with respect to the three open positions because he could think of no other reason that the school department would not hire him. Although at trial plaintiff asserted that Koutsogiane had discriminated against him "to some degree," he also admitted that Koutsogiane had written a letter of recommendation on his behalf and was the person who had informed him of one of the teaching vacancies; McGarry further admitted that he had no direct evidence tending to show that he had been the victim of age discrimination.

Principal Koutsogiane also testified at trial. She described the selection process for new teachers, which involves candidate interviews with a committee, and typically culminates with the submission of between one and three names to the superintendent. She testified that the ultimate hiring decision is made by the superintendent. According to Koutsogiane, she kept a separate copy of her interview sheets from McGarry's 1999 interview. She testified that her interview sheets for the 1998 interview had been forwarded to the school department's central office along with the list of recommended candidates. Koutsogiane denied discriminating against plaintiff and testified that no one on the interview committee had mentioned or discussed plaintiff's age as a reason for not hiring him. She further cited multiple examples in which the Cumberland school department hired teachers who were over the age of forty.

Koutsogiane specifically testified about the selection process in 1998 that resulted in the selection of candidates other than plaintiff. She stated that for the two English positions, plaintiff had been ranked fourth among the applicants, and that only the top three names were submitted to the superintendent for consideration, in accordance with the usual practice. Koutsogiane recalled that Hannah Goodman (Goodman) ultimately was hired for the full-time position and Cecille Palumbo (Palumbo) was selected for the part-time position.[6] Concerning the 1999 position, Koutsogiane testified that at the completion of the interview process, plaintiff was ranked third among the candidates, but that the committee elected to submit only one name to the superintendent—Tracy Tellier (Tellier), the top-ranked applicant, who ultimately was hired for the position. Tellier—who was around thirty-six years old at the time of her hiring—had worked for the Cumberland school department for the previous nine years in various capacities and had been a student teacher at the same school where the vacancy existed. Koutsogiane testified that although plaintiff was a "pretty good" candidate, she believed that the candidates who were selected for the three vacancies had superior qualifications.

Also testifying at trial was Joseph Nasif (Nasif), the superintendent of schools in Cumberland from 1996 to 2005. He stated

---

**6.** According to Koutsogiane, Goodman had a B.A. in English, with a minor in journalism, and she had also taken numerous writing courses while in college—all factors that weighed in her favor. Koutsogiane further testified that Palumbo held a Master's degree in teaching, which the committee believed positively augmented her qualifications.

that while interview committees usually forward their interview sheets to the central school department office, there was no policy requiring them to do so. Nasif was unsure whether the school department retained the missing interview sheets. He also admitted that when responding to McGarry's allegation of age discrimination, a representative of the school department erroneously notified the Commission that McGarry was not certified to teach English; according to Nasif, the erroneous response was the result of an "issue" with the school department's certification roster.

Roger Parent (Parent), the former principal of North Cumberland Middle School, also testified. Parent described the hiring process for teaching vacancies in the Cumberland school system. He stated that members of an interview committee receive packets containing candidates' application materials, along with interview sheets upon which they can take general notes and assess—on a scale of one to five—the candidates' answers to a series of identical questions. He additionally testified that typically the interview sheets, containing the candidate's ranking, are sent to the school department central office. It is these interview sheets, characterized as "notes," that form the basis of plaintiff's spoliation contention.

Because the school department was unable to produce the 1998 interview sheets at trial, the trial justice determined that a spoliation instruction was appropriate. The trial justice reached that conclusion because the evidence showed that: (1) the school department regularly drafted and used interview sheets as part of its hiring process and had done so for McGarry's 1998 interview; and (2) at the time of trial, the school department could not locate and produce these documents. Accordingly, the trial justice determined that a jury instruction on spoliation was warranted and that the jury "may infer that the missing evidence would have been unfavorable to the position of the defendant."[7]

After plaintiff rested, defendant moved for judgment as a matter of law in accordance with Rule 50. The defendant argued that no evidence existed in the record from which the jury could determine that "age played any role in [defendant's] hiring decisions * * *." According to defendant, the adverse inference permitted because of spoliation was the only evidence upon which a jury could infer that age motivated defendant's hiring decision and "that is not enough. You need some, some molecule of proof that age was the [reason]." The defendant asked the trial justice "to rule on it ahead of time * * *

7. At the close of trial, the trial justice's gave the following jury instruction regarding spoliation:
 "[Y]ou may consider the issue of spoliation of evidence, that is, destruction of evidence, where a defendant:
 (1) has failed to produce a document which the evidence tends to show was routinely generated in its business, and;
 (2) has not been able to provide a satisfactory explanation as to why the document was not produced with respect to the incident in the case before the Court.
 "The plaintiff is not required to show that the defendant destroyed or lost the documents in bad faith. Spoliation of evidence may be innocent or intentional or somewhere in between. You may consider the facts and circumstances which were proven at trial relating to the 1998–1999 interview notes. You may consider who had custody or control of the notes, how they were destroyed or lost, the lack of explanation thereof for their destruction, the timing of the destruction, as well as any other facts and circumstances bearing on this issue. "If you find that there is an unexplained, and negligent or deliberate absence of relevant evidence, you may infer that the missing evidence would have been unfavorable to the position of the defendant."

[that] there is not enough evidence in this record [to find defendant liable] even with a spoliation charge * * *."

The trial justice denied the Rule 50 motion for judgment as a matter of law. He declared:

"I have to side with [plaintiff] with respect to the missing records in this case [that] could be very informative and helpful on [the question of age discrimination] and, of course, they are unavailable to us and the jury will get a spoliation instruction in understanding that they can draw an adverse inference against the defendants for those lost records.

"I think that [inference] coupled with some of the inconsistencies and other circumstances surrounding the interview process and hiring of individuals other than the plaintiff is enough to survive this motion for judgment as a matter of law."

The defendant chose not to present any witnesses, but renewed its Rule 50 motion at the close of the evidence—a motion that the trial justice again denied. The jury returned a verdict in plaintiff's favor on both the age discrimination and retaliation claims, awarding him $329,814.18 in damages. Thereafter, defendant filed a motion for a new trial and renewed its motion for judgment as a matter of law. A hearing on these motions was held on August 8, 2010.

The trial justice issued a lengthy written decision, in which he granted defendant's posttrial motions. Significantly, the trial justice concluded that although he initially found that a "spoliation instruction was warranted," it constituted an error of law to allow the jury to draw an adverse inference from the missing interview sheets because there was "no extrinsic evidence to support that inference." The trial justice concluded that without the adverse inference, there was "no legally sufficient evidentiary basis upon which a reasonable jury could find [p]laintiff was discriminated against on the basis of age," and he granted defendant's motion for judgment as a matter of law. The trial justice also granted, in the alternative, defendant's motion for a new trial, but on the same error-of-law grounds he relied upon in passing on the motion for judgment as a matter of law. The trial justice opined that the jury gave "an inordinate amount of weight" to the missing interview sheets and that the evidence presented at trial did not support the jury's finding of age discrimination.[8]

### Standard of Review

"Our review of a trial justice's decision on a motion for judgment as a matter of law is de novo." Medeiros v. Sitrin, 984 A.2d 620, 625 (R.I.2009) (citing Gianquitti v. Atwood Medical Associates, Ltd., 973 A.2d 580, 589 (R.I.2009)). "This Court, like the trial justice, will examine 'the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party.'" Oliveira v. Jacobson, 846 A.2d 822, 829 (R.I.2004) (quoting Estate of Fontes v. Salomone, 824

---

8. The trial justice additionally ruled that plaintiff failed to prove his retaliation claim. The trial justice determined that plaintiff fell short of proving a viable retaliation claim because plaintiff had testified that he was dissatisfied with substitute teaching—a task that McGarry likened to "babysitting"—and never testified, or even implied, that he had sought substitute teaching positions at Cumberland schools after December 1999. The trial justice accordingly granted defendant's motion for judgment as a matter of law on that claim and its motion for a new trial, in the alternative. As noted, plaintiff did not argue that matter on appeal, and that issue is not before us.

A.2d 433, 437 (R.I.2003)). Judgment as a matter of law is appropriate "if, after viewing the evidence in the light most favorable to the nonmoving party, [the trial justice] determines that the nonmoving party has not presented legally sufficient evidence to allow the trier of fact to arrive at a verdict in his favor." *Gianquitti*, 973 A.2d at 590 (quoting *Franco v. Latina*, 916 A.2d 1251, 1259 (R.I.2007)).

■ "A trial justice's role in considering a motion for a new trial is that of a superjuror, who must weigh the evidence and assess the credibility of the witnesses." *Pollard v. Hastings*, 862 A.2d 770, 777 (R.I.2004) (citing *Oliveira*, 846 A.2d at 826). "[T]he trial justice must consider, in the exercise of his [or her] independent judgment, all the material evidence in the case, in the light of his [or her] charge to the jury and pass on its weight and the credibility of the witnesses, determine what evidence is believable, and, decide whether the verdict rendered by the jury responds to the evidence presented and does justice between the parties." *Morgera v. Hanover Insurance Co.*, 655 A.2d 698, 698 (R.I.1995) (mem.). If the trial justice is persuaded that "the verdict is wrong because it fails to respond truly to the merits and to administer substantial justice between the parties or is against the fair preponderance of the evidence, he [or she] should set aside the verdict and order a new trial." *Id.* (citing *Cartier v. State*, 420 A.2d 843, 848 (R.I.1980)). "If the trial justice has carried out the duties required by Rule 59 of the Superior Court Rules of Civil Procedure and our decided cases, his or her decision is accorded great weight by this Court and will not be disturbed unless the plaintiff 'can show that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong.'" *Botelho v. Caster's, Inc.*, 970 A.2d 541, 546 (R.I.2009)

(quoting *International Depository, Inc. v. State*, 603 A.2d 1119, 1123 (R.I.1992)).

## Analysis

### I

### Motion for Judgment as a Matter of Law

■ In employment discrimination cases, the parties must engage in the three-part burden-shifting paradigm set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Center For Behavioral Health, Rhode Island, Inc. v. Barros*, 710 A.2d 680, 685 (R.I.1998). According to this paradigm, the plaintiff first must establish a *prima facie* case by proving four preliminary elements of discrimination. *Id.* In a failure to hire case, such as the one at bar, the plaintiff must prove that: "(1) he is a member of the protected class, in this case at least forty years old; (2) he applied for an open position; (3) he was not selected; and (4) the employer 'filled the position by hiring another individual with similar qualifications.'" *Casey v. Town of Portsmouth*, 861 A.2d 1032, 1037 (R.I.2004) (quoting *Gu v. Boston Police Department* 312 F.3d 6, 11 (1st Cir.2002)). "The burden placed on the complainant at this stage is not especially onerous * * *." *Barros*, 710 A.2d at 685.

■ Once the plaintiff establishes these four elements, a presumption arises that the defendant committed unlawful discrimination. *Barros*, 710 A.2d at 685. The burden of production, but not the burden of persuasion, then shifts to the defendant to offer a nondiscriminatory reason why the plaintiff was not hired. *Id.* If the defendant proffers a nondiscriminatory explanation, the presumption of discrimination—but not the elements of the *prima facie* case itself—disappears. *See id.* The

burdens of proof and persuasion fall squarely upon the plaintiff to demonstrate that the defendant's tendered explanation is only a pretext and that discrimination was the true motive underlying the hiring decision. *Id.* (citing *Resare v. Raytheon Co.*, 981 F.2d 32, 42 (1st Cir.1992)).

We highlight that although the presumption favoring the plaintiff falls away once the defendant offers a nondiscriminatory explanation for not hiring the plaintiff in accordance with the second *McDonnell Douglas* prong, the elements of the plaintiff's *prima facie* case remain relevant evidence on the ultimate question of unlawful discrimination. *See Barros*, 710 A.2d at 685 (holding that "the elements of a sufficient prima facie case," combined with other factors, may satisfy the plaintiff's burden of proof (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993))); *see, e.g., Rorie v. United Parcel Service, Inc.*, 151 F.3d 757, 760 (8th Cir. 1998) (explaining that although the *prima facie* case no longer creates a presumption in the plaintiff's favor once the defendant has proffered a nondiscriminatory reason for its actions, the *"elements* of the prima facie case remain" (quoting *Ryther v. KARE 11*, 108 F.3d 832, 837 (8th Cir. 1997))); *Pagano v. Frank*, 983 F.2d 343, 347 n. 6 (1st Cir.1993) (stating that "[e]ven though the *McDonnell Douglas* inference vanishes, the evidence submitted in support of the prima facie case remains under consideration").

The third *McDonnell Douglas* prong constitutes the crux of proving a discrimination case. "To satisfy this third prong, a plaintiff must do more than simply cast doubt upon the employer's justification." *Resare*, 981 F.2d at 42 (citing *Ramos v. Roche Products, Inc.*, 936 F.2d 43, 48 (1st Cir.1991)). This Court has held that "proof that a reason for not hiring

plaintiff was pretextual is insufficient, on its own, to support a finding of discrimination." *Casey*, 861 A.2d at 1038 (citing *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742). The plaintiff must demonstrate not only that the defendant's purported reason for not hiring the plaintiff was false, but also that discrimination was the real reason. *Hicks*, 509 U.S. at 511 n. 4, 113 S.Ct. 2742. Because of the insidious nature of discrimination, courts have recognized that this is a difficult burden to meet.

Cognizant that garnering direct evidence of employment discrimination inherently is a challenging task, courts do not insist that a plaintiff produce evidence of the defendant holding the proverbial "smoking gun." *See Barros*, 710 A.2d at 685 (noting that the plaintiff, in proving the third prong in an employment discrimination case, is not required to produce evidence of the "smoking gun" variety (quoting *Resare*, 981 F.2d at 42)); *see also United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) (noting the "sensitive and difficult" nature of the question facing triers of fact in employment discrimination cases, in which "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes"). A plaintiff in an employment discrimination case is not required to produce direct evidence of discrimination; rather, indirect and circumstantial evidence may be sufficient to prove the plaintiff's case. *See Byrnie v. Town of Cromwell Board of Education*, 243 F.3d 93, 102 (2d Cir.2001) (noting that the plaintiff was unable to produce direct evidence of discrimination and, therefore, had to prove discrimination "on the strength of his prima facie case combined with circumstantial evidence"); *Casey*, 861 A.2d at 1038 n. 3. Significantly, in the context of a Rule 50 motion for judgment as a matter of law, "[t]he factfin-

der's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742.

 Having set forth the legal framework, we now apply this burden-shifting paradigm to the case at hand. There is no dispute that McGarry, who was fifty-six-years-old and certified to teach English, set forth a *prima facie* case of age discrimination and satisfied the first prong of the *McDonnell Douglas* analysis. On appeal, plaintiff contends—for the first time—that defendant failed to offer a non-discriminatory reason for not hiring plaintiff, as required by the second *McDonnell Douglas* prong. The plaintiff did not raise this issue at trial, however; and, consequently, we deem it waived. *See State v. Bettencourt,* 723 A.2d 1101, 1107 (R.I.1999) ("According to our well-settled 'raise or waive' rule, issues that were not preserved by a specific objection at trial, 'sufficiently focused so as to call the trial justice's attention to the basis for said objection, may not be considered on appeal.'" (quoting *State v. Toole,* 640 A.2d 965, 972 (R.I. 1994))). Moreover, although there is not abundant proof of defendant's nondiscriminatory reason for not hiring plaintiff, the record reveals that Koutsogiane testified on cross-examination that plaintiff ranked lower than the candidates who were hired for the positions. In her testimony, Koutsogiane described the attributes of the successful candidates and the reasons that led the committee to determine that they were most qualified for the positions. Of course, the missing interview sheets could have either debunked or enforced this testimony, and a spoliation instruction permitted the jury to reject her testimony and

conclude that the proffered reason was pretextual.

 The crucial issue in this case, we conclude, is whether plaintiff satisfied his burden of proof and persuasion pursuant to the third prong of the *McDonnell Douglas* paradigm: proof that defendant's explanation for not hiring plaintiff was pretextual and that the real reason he was not hired was age discrimination. In addition to setting forth a *prima facie* case, plaintiff presented evidence that in response to plaintiff's charge of discrimination filed with the Commission, defendant misrepresented that McGarry was not certified to teach English and that this was the reason plaintiff was not hired. Additionally, plaintiff introduced evidence from which a factfinder could conclude that defendant deviated from its accepted interview and hiring practices by failing to maintain the interview sheets from the 1998 interview. Further, plaintiff presented evidence that after the 1999 interview, although plaintiff ranked in the top three, his name was not submitted for consideration because the committee decided to recommend a single candidate, even though three names had been submitted for the two previous positions.

 "The doctrine of spoliation provides that 'the deliberate or negligent destruction of relevant evidence by a party to litigation may give rise to an inference that the destroyed evidence was unfavorable to that party.'" *Mead v. Papa Razzi Restaurant,* 840 A.2d 1103, 1108 (R.I.2004) (quoting *Tancrelle v. Friendly Ice Cream Corp.,* 756 A.2d 744, 748 (R.I.2000)). Accordingly, the trial justice correctly gave a spoliation instruction to the jury permitting an inference in plaintiff's favor that the destroyed sheets amounted to evidence

that was unfavorable to defendant.[9] *See id.* (describing the adverse inference permissible against a despoiler). In the context of this case, one permissible adverse inference that might be drawn from the missing interview sheets is that plaintiff did not rank fourth in the 1998 interview and that his ranking and qualifications equaled or exceeded the ranking of the three qualifying candidates. The jury also could find "a suspicion of mendacity" from the unexplained loss of these crucial documents. *See Hicks,* 509 U.S. at 511, 113 S.Ct. 2742.

In his posttrial decision granting judgment as a matter of law, the trial justice departed from his earlier trial rulings on the state of the evidence. In so doing, he relied upon a case decided by the United States Court of Appeals for the Second Circuit, *Kronisch v. United States,* 150 F.3d 112, 127 (2d Cir.1998), wherein the court held that "before we permit the drawing of an adverse inference, we require some showing indicating that the destroyed evidence would have been relevant to the contested issue." *See also id.* at 128 ("We do not suggest that the destruction of evidence, standing alone, is enough to allow a party who has produced no evidence—or utterly inadequate evidence—in support of a given claim to survive summary judgment on that claim."). The trial justice also referenced a number of Rhode Island cases—including *Mead v. Papa Razzi,* 899 A.2d 437, 440 (R.I.2006), *Kurczy v. St. Joseph Veterans Association,* 820 A.2d 929, 938, 941 (R.I.2003), and *Tancrelle,* 756 A.2d at 746–49—from which he concluded that our case law requires plaintiffs to produce some corroborating evidence to accompany the negative infer-

ence that may be made in light of missing evidence. In each of these cases, the plaintiff presented additional evidence to bolster the adverse inference that plaintiff gained from the spoliation doctrine, but at no point did we announce a rule conditioning a spoliation instruction on the presentation of additional evidence to support the inference.

We are of the opinion that by requiring additional evidence to support the inference, exclusive of the evidentiary benefit from the adverse inference, the trial justice erroneously increased plaintiff's burden of proof. The court in *Kronisch* merely required the production of *some* additional evidence to supplement the adverse inference against the despoiler. *Kronisch,* 150 F.3d at 128 (holding that "where the innocent party has produced *some* (not insubstantial) evidence in support of his claim, the intentional destruction of relevant evidence by the opposing party may push a claim that might not otherwise survive summary judgment over the line") (emphasis added). Indeed, if a plaintiff were required independently to prove a discrimination case apart from the adverse inference arising from the spoliation doctrine, the benefit conferred by the spoliation instruction would lose all efficacy. The *Kronisch* court astutely recognized the necessity of preserving "the prophylactic and punitive purposes of the adverse inference," lest "innocent parties meant to benefit from the adverse inference against offending parties would receive no benefit at all, having been deprived of evidence that may have been crucial to making their case, and yet being held to precisely the same standard of

9. A spoliation instruction is appropriate when it is demonstrated that: (1) the defendant has failed to produce a document that the evidence tends to show was routinely generated in the business; and (2) has not been able to provide a satisfactory explanation as to why the document was not prepared with respect to the incident in the case before the court. *Mead v. Papa Razzi,* 899 A.2d 437, 442–43 (R.I.2006).

proof * * *." *Id.* We agree with this reasoning and set forth our view that spoliation evidence has both a prophylactic and punitive purpose, and its utility must be gauged on a case-by-case basis.

 We acknowledge that the precise degree of extrinsic evidence that must be offered, in addition to the adverse spoliation inference, in order to sustain a discrimination claim is difficult to define. We are of the opinion that disbelief of a defendant's proffered explanation for not hiring a plaintiff, combined with a suspicion of mendacity in connection with destroyed evidence and the elements of a *prima facie* case, may be sufficient evidence to survive a Rule 50 motion for judgment as a matter of law. *See Hicks*, 509 U.S. at 511, 113 S.Ct. 2742 (holding that "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination"). In cases in which a jury detects "[t]he odor of an orchestrated effort on the part of [the] defendant to suppress relevant evidence that was harmful to [the] defendant's case," *Tancrelle*, 756 A.2d at 751, it may be appropriate for a jury to conclude that a defendant is liable based on an adverse inference that supplies a crucial element of the claim, even without substantial corroborating evidence. In sum, rejection by the jury of an employer's proffered reasons for not hiring a plaintiff "will *permit* the trier of fact to infer the ultimate fact of intentional discrimination * * *." *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742. Nevertheless, although rejection of a defendant's proffered reasons is sufficient as a matter of law to sustain a finding of discrimination, the ultimate finding of discrimination must be made by the fact-finder. *See id.* at 511 n. 4, 113 S.Ct. 2742. Finally, when the evidence produced at trial demonstrates that spoliation was the result of mere negligence, the adverse inference arising from a spoliation instruction, without more, may not be sufficient to establish the elements of the claim. In such a case, a verdict resting solely or chiefly on an adverse inference would be against the weight of the evidence.

Turning to the case before us, we are of the opinion that the trial justice erred in granting defendant's motion for judgment as a matter of law based on an erroneous belief that "permitting the jury to draw an adverse inference from the missing notes where there was no extrinsic evidence to support that inference was an error of law." We also note that the trial justice did not announce his understanding of the quantum of evidence required to satisfy plaintiff's burden of proof until after the trial, when he entertained defendant's posttrial motions. Indeed, the trial justice twice denied defendant's motion for judgment as a matter of law, declaring that the adverse inference against defendant in conjunction with "some of the inconsistencies and other circumstances surrounding the interview process and hiring of individuals other than the plaintiff [was] enough to survive [the] motion for judgment as a matter of law." In light of the trial justice's earlier decision at trial and his postverdict turnabout (in the face of the same evidence), which, we conclude, increased plaintiff's burden of proof, we are of the opinion that the decision to grant judgment as a matter of law clearly was wrong.

 When reviewing a trial justice's decision to grant judgment as a matter of law, it is our function to "examine 'the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the po-

sition of the nonmoving party.' " *Oliveira,* 846 A.2d at 829 (quoting *Estate of Fontes,* 824 A.2d at 437). In this case, the trial justice determined that spoliation had occurred with regard to the 1998 interview sheets, which went missing while in defendant's sole care and control. There was no explanation for the loss of this evidence. The spoliation doctrine permitted the factfinder to draw an adverse inference from the missing interview sheets—in essence, to infer that the missing papers would have aided plaintiff in establishing the third prong of the *McDonnell Douglas* paradigm. Viewed in the light most favorable to plaintiff, a reasonable jury could find that the rankings set forth in the missing interview sheets suggested that plaintiff's qualifications were commensurate with the other candidates and that his name should have been included on the list of names submitted to the superintendent in 1998. McGarry also presented evidence that defendant had misrepresented his certification status to the Commission. This circumstantial evidence could establish an evidentiary mosaic that, while not of the "smoking gun" variety, nonetheless could convince the jury that age discrimination was the reason plaintiff was not hired, particularly if the jury detected bad faith on the part of defendant. Given these facts, we cannot say that plaintiff, as the nonmoving party, failed to present "legally sufficient evidence to allow the trier of fact to arrive at a verdict in his favor." *Medeiros,* 984 A.2d at 625 (quoting *Gianquitti,* 973 A.2d at 590). Accordingly, we hold that the trial justice erred in granting defendant's motion for judgment as a matter of law.

▮ We pause to note that the standard that courts must apply when passing on a Rule 50 motion for judgment as a matter of law obviously is quite different from the standard a trial justice applies when reviewing a motion for a new trial. When confronted with a motion for judgment as a matter of law, the trial justice must examine the evidence in the light most favorable to the nonmoving party and draw from the record all reasonable inferences that support the position of the nonmoving party. *Oliveira,* 846 A.2d at 829 (citing *Estate of Fontes,* 824 A.2d at 437). This deference is required because of the weighty consequences attendant to granting a Rule 50 motion—it removes the case from the jury's consideration upon a finding that the nonmoving party failed to present legally sufficient evidence to permit the trier of fact to reach a favorable verdict. *See Gianquitti,* 973 A.2d at 590 (citing *Franco,* 916 A.2d at 1259).

In this case, plaintiff offered sufficient evidence to establish a *prima facie* case, and, although defendant presented evidence of its non-discriminatory reasons for not hiring, it was up to the jury to decide whether these reasons were credible. Additionally, there was evidence that defendant, possibly through negligence, misrepresented to the Commission that plaintiff was not qualified to teach English. These factors, combined with the evidentiary inference that the missing records were unfavorable to defendant, to wit, the official explanation for not hiring plaintiff was false (which the jurors could decide with or without the inference), could prove that the real reason he was not hired was his age.

In ruling on a motion for a new trial, however, a markedly different standard of review and analysis obtains. When considering such a motion, the trial justice must assess the weight of the evidence presented at trial in the light of his or her independent judgment, pass on the credibility of the witnesses, and decide whether the jury's verdict fairly administered justice between the parties. *See Morgera,* 655

A.2d at 698 (citing *Cartier*, 420 A.2d at 847, 848). Additionally, so long as the trial justice properly carries out his or her duties, we must accord his or her assessment great weight. *See Cartier*, 420 A.2d at 848 (citing *Puc v. Leaseway of New England*, 121 R.I. 149, 152, 396 A.2d 940, 942 (1979)).

## II

### Motion for a New Trial

■ We now turn to defendant's motion for a new trial. It is clear that the trial justice did not agree with the verdict. In passing upon defendant's new-trial motion, the trial justice incorporated by reference his lengthy analysis and view of the evidence as it related to the motion for judgment as a matter of law. Although the trial justice largely granted the motion for a new trial on the same error-of-law grounds as the judgment as a matter of law—a ruling we hold to be erroneous—he also reviewed and weighed the evidence and testimony produced at trial. The trial justice noted that plaintiff characterized the 1998 interview as "pleasant," and admitted that he never was asked inappropriate or age-related questions. The trial justice also observed that the 1999 interview sheets that were introduced into evidence contained no inkling of age-related animus toward plaintiff. The trial justice also recounted how Koutsogiane testified that the school department had hired a number of individuals over age forty and that the interview committee did not consider plaintiff's age in reaching its hiring decision.

The plaintiff argues that the trial justice overlooked material evidence and did not evaluate the evidence in light of his charge to the jury. We disagree; the trial justice issued a lengthy written decision, in which he set forth the trial evidence in great detail. After our careful review of the record, we are of the opinion that the decision of the trial justice granting a new trial adequately set forth his belief that the plaintiff's claim was not supported by the weight of the evidence. Given the body of evidence produced at trial and the trial justice's conscientious review of the record, we cannot say that the trial justice's determination that "the jury gave an inordinate amount of weight and credence to the missing interview notes" clearly was wrong. Accordingly, we affirm the granting of the defendant's motion for a new trial.

### Conclusion

For the reasons set forth in this opinion, we reverse in part and affirm in part the judgment of the Superior Court. The papers in this case may be returned to the Superior Court.

ROBINSON, J., concurring in part and dissenting in part.

I am pleased to concur in the majority's affirmance of the trial justice's grant of the defendant's motion for a new trial. However, I respectfully but vigorously dissent from the majority's opinion concerning Rule 50 of the Superior Court Rules of Civil Procedure.

After much reflection, I have become convinced that the trial justice was correct when he ultimately granted defendant's Rule 50 motion. I am unequivocally of the view that plaintiff did not meet his burden of persuasion.[10] Other than the adverse

10. As the majority describes, "although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125

inference which the jury could draw on the basis of spoliation (*viz.*, the absence of interview sheets), I perceive *no* other facts upon which a reasonable jury could find that defendant's nondiscriminatory explanation for its decisions was a pretext—let alone a pretext for age discrimination.

I do not dispute that, in the instant case, "the first two steps of the *McDonnell Douglas* pavane have been satisfactorily choreographed * * *." *See Mesnick v. General Electric Co.*, 950 F.2d 816, 825 (1st Cir.1991) (Selya, J.). Turning then to the requirement that plaintiff show that the reason articulated by defendant for not hiring plaintiff was not worthy of belief, the majority has correctly stated that "[t]o satisfy this third prong, a plaintiff *must do more* than simply cast doubt upon the employer's justification." *Resare v. Raytheon Co.*, 981 F.2d 32, 42 (1st Cir.1992) (emphasis added); *see also Mesnick*, 950 F.2d at 825; *Center for Behavioral Health, Rhode Island, Inc. v. Barros*, 710 A.2d 680, 685 (R.I.1998). I can perceive nothing of any substance in the record that could serve as a basis for rejecting defendant's nondiscriminatory explanation as being pretextual. In my judgment, plaintiff fell woefully short of fulfilling his burden of persuasion.

I disagree with the majority's application of the spoliation doctrine to the facts of the instant case. The testimony evidenced that members of the interview committee received packets which contained the application materials of candidates and interview sheets upon which they could take general notes and assess each candidate's answers to questions. The then-superintendent testified that, although interview committees usually forward their interview sheets to the school

department's central office, *no policy existed* which required them to do so. The principal testified that she had indeed forwarded the 1998 interview sheets to the department. She had in fact retained a copy of her notes from plaintiff's 1999 interview. In my opinion, the absence of those notes relating to the interview does not permit a spoliation inference of great magnitude. The majority opinion, which attempts to reconcile *Kronisch v. United States*, 150 F.3d 112 (2d Cir.1998), with the facts of the instant case, completely ignores the fact that there is absolutely no sufficient evidence, other than the missing documents, to support a finding of discrimination. The destruction of evidence, standing alone, is not enough to allow "a party who has produced no evidence—or utterly inadequate evidence—in support of a given claim to survive summary judgment on that claim." *Kronisch*, 150 F.3d at 128; *see also Byrnie v. Town of Cromwell, Board of Education*, 243 F.3d 93, 107 (2d Cir.2001); *Sarmiento v. Montclair State University*, 285 Fed.Appx. 905, 911 (3d Cir.2008).

In my opinion, plaintiff provided no meaningful evidence of pretext to support a verdict in his favor. *See Sarmiento*, 285 Fed.Appx. at 911 ("Given that [the plaintiff] has failed to cast meaningful doubt on any of the core facts underlying the nondiscriminatory rationale proffered by [the defendant], we believe that any inference that the university destroyed the committee notes with a view towards concealing unlawful discrimination would be highly speculative."). Although plaintiff need not produce evidence of the proverbial "smoking gun," he must show *some sort of evidence* to support his case, which, in my view, plaintiff utterly failed to do. In my

L.Ed.2d 407 (1993) (alteration and emphasis in original) (internal quotation marks omitted); *see also Reeves v. Sanderson Plumbing* *Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Udo v. Tomes*, 54 F.3d 9, 12 (1st Cir.1995).

candid opinion, the majority is opening the flood gates to a great deal of unnecessary litigation; as I understand the majority's opinion, a trial justice could *never* grant a motion for a judgment as a matter of law or for summary judgment when a defendant employer did not maintain its personnel records with military precision. Accordingly, in my judgment, the trial justice did not at all err in granting the Rule 50 motion.

Striving to find some substantial evidence to accompany the spoliation-based adverse inference, the majority relies upon a "suspicion of mendacity" due to both spoliation (which I believe is not enough on its own) and the misrepresentation to the Rhode Island Commission for Human Rights as to plaintiff's certification status.[11] I acknowledge that is a basic principle that "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal quotation marks omitted); *see also Neri v. Ross–Simons, Inc.*, 897 A.2d 42, 50 (R.I.2006). Nevertheless, that *de minimis* misrepresentation provides absolutely no basis in this case for a jury to find *any* suspicion of mendacity.

Finally, it is important to bear in mind that, when addressing claims of discrimination, the focus must be on whether or not there is evidence of pretext that suggests the presence of discriminatory animus and not on the inherent soundness of the defendant's personnel decisions. *See,*

*e.g., Sullivan v. Liberty Mutual Insurance Co.*, 444 Mass. 34, 825 N.E.2d 522, 541 (2005) ("[O]ur task is not to evaluate the soundness of [the defendant's] decision making, but to ensure it does not mask discriminatory animus."); *see also Mesnick*, 950 F.2d at 825 ("Courts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions."). My respect for my colleagues in the majority is genuine; but I fear that, in this case, they are acting in actuality like a super-personnel board. Indeed, in *Craine v. Trinity College*, 259 Conn. 625, 791 A.2d 518 (2002), the Connecticut Supreme Court made the following perceptive observation with respect to judicial review of the hiring process in an academic setting:

> "[W]e note that the issue of pretext is a particularly thorny one in an academic setting. A court must be careful not to substitute its judgment improperly for the academic judgment of the school. A university's prerogative to determine for itself on academic grounds who may teach is an important part of our long tradition of academic freedom." *Id.* at 536 (internal quotation marks omitted); *see also Sweezy v. New Hampshire*, 354 U.S. 234, 263 [77 S.Ct. 1203, 1 L.Ed.2d 1311] (1957).

I am also unable to reconcile the result in the instant case with this Court's unanimous decision in *Casey v. Town of Portsmouth*, 861 A.2d 1032 (R.I.2004). In that case, we noted that the "reality of the interview process must be considered when analyzing a subjective legitimate, nondiscriminatory reason in *failure to hire* cases; employers, when interviewing mul-

---

11. The majority also turns to the fact that there were not three names submitted for the 1999 position, while there were three names submitted for the other positions. I fail to understand how that fact evidences discrimination; instead, to me, it simply indicates that the candidate who secured the job had the best credentials.

tiple applicants, often must make quick judgments based on first impressions." *Id.* at 1039. The majority in its opinion has passed over in complete silence the "reality of the interview process."

In my judgment, the record reflects that the Cumberland School Department in fact made an entirely rational choice. The record indicates that the plaintiff had only just obtained his certification to teach English the very same month in which he applied for the teaching positions at issue. Those who were chosen over him had more impressive credentials in terms of teaching experience and education in the field of English. The school department therefore opted to hire persons with significant credentials relative to the teaching of English as opposed to the plaintiff, whose certification in that field was of very recent vintage. As I view it, this case involves nothing more than a dissatisfied applicant using the anti-discrimination laws in an effort to obtain the recognition which he could not obtain when his qualifications were compared with those of others.

Accordingly, in my judgment, this was an appropriate case for the trial justice to grant a Rule 50 motion.

For the reasons set forth herein, I very respectfully concur in part and dissent in part.