December 7, 2017

**Supreme Court**

No. 2016-267-Appeal.
(PC 12-4093)

Pamela Azar                          :

    v.                          :

Town of Lincoln, et al.              :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Pamela Azar                           :

v.                           :

Town of Lincoln, et al.              :


Present:  Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Indeglia, for the Court.**  Pamela Azar (plaintiff or Azar), a former employee of

the Town of Lincoln School Department, appeals the Superior Court's grant of a motion for

judgment as a matter of law in favor of the defendants, Town of Lincoln, Lincoln School

Committee, and John Ward, in his official capacity as Finance Director for the Town of Lincoln

(collectively, Lincoln or defendants) in an employment discrimination action.  The plaintiff

appears before us *pro se*.  This case came before the Supreme Court on November 2, 2017,

pursuant to an order directing the parties to appear and show cause why the issues raised in this

appeal should not be summarily decided.  After hearing the parties' arguments and reviewing

their memoranda, we are satisfied that cause has not been shown.  Accordingly, we shall decide

this appeal at this time without further briefing or argument.  For the reasons set forth herein, we

affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

On August 8, 2012, Azar filed a complaint in Providence County Superior Court alleging

claims of employment discrimination pursuant to the Rhode Island Civil Rights Act (RICRA),

G.L. 1956 chapter 112 of title 42, and the Civil Rights of People with Disabilities Act (CRPDA), G.L. 1956 chapter 87 of title 42. She argued that she was discriminated against because she advocated for education services for her disabled son who was a student in the Lincoln school system. Specifically, plaintiff contended that the Lincoln School Department filed truancy charges with respect to her son's absences as retaliation.[1]

At a jury trial in June 2016, where she was represented by an attorney, plaintiff testified to various actions taken by teachers and the school principal, which amounted to what she considered a hostile work environment. All the instances about which plaintiff testified occurred after Lincoln filed truancy charges in 2006 against her son and lasted until plaintiff took a leave of absence in 2008. For example, plaintiff described how other teachers treated her, including ignoring her at meetings and excluding her from positions she previously held. The plaintiff also said that the Special Education Department often summoned her during her workday to attend to issues regarding her son's education, and plaintiff recalled being called to the main office over the intercom, which was not a common practice. Azar, in reaction to these occurrences, testified that she told the principal that she was feeling "isolated by the teachers," but that he responded that he did not "want to get involved."

The plaintiff also testified regarding the 2009 truancy charges Lincoln filed against her in response to her son's failure to attend school for much of the 2008-2009 school year. She stated that in the fall of 2008, she had started exploring other placements for her son, and she disagreed with Lincoln's choice of placement at the Bradley School.[2] As a result, she appealed it to federal

---

[1] In Superior Court, plaintiff also filed claims of malicious prosecution and abuse of process, which she voluntarily dismissed during trial.

[2] In March 2008, plaintiff had sued Lincoln in Superior Court regarding her son's educational placement, and Lincoln removed the case to federal court. The case eventually settled, and, as part of the settlement, Lincoln involved an expert to determine the most appropriate placement

court, and, in the interim, a hearing on the truancy charges was conducted in October 2009. At the hearing, a Family Court justice ordered that plaintiff's son be placed at the Wolf School[3] for forty-five days. Azar testified that the justice commented that he could not "comprehend" why Lincoln took so long to file the truancy charges. Over the next year, the parties returned to the Family Court at least three times to reassess Azar's son's educational placement. In October 2010, the charges were dismissed. However, Azar testified that Lincoln wanted to drop the charges earlier, but she requested that the charges not be dropped because she wanted to "stay under the protection of the Family Court" to ensure her son's placement at the Wolf School.

In addition to plaintiff's testimony, Mary Ann Canning McComiskey, the teachers' union president and a school social worker in Lincoln, testified for plaintiff at the trial. She recalled that members of the school community were well aware of Azar's "difficulties" with Lincoln regarding her son. McComiskey, sensing the less-than-harmonious relationships between Azar and other teachers, spoke to teachers and the principal about the matter. She stated that, during her conversation with the principal, he was unable to justify why Azar had been called to the office over the intercom. McComiskey recalled explaining to the school superintendent in either 2005 or 2006 that Azar was being "socially isolated" and that the superintendent responded that Azar was "crazy."

The defense called three witnesses to testify: Maryann Strubel, the director of student services; and Barbara Marsden and Kristen Lowe, two teachers who had worked with Azar. Marsden and Lowe both testified that Azar had changed during the 2006-2007 school year,

---

for Azar's son. While both parties agreed that Azar's son required an out-of-district placement, they disagreed as to the best school for him.

[3] The Wolf School had been successful with educating a number of students with a similar diagnosis to Azar's son.

transforming every conversation into one about her son, causing both teachers to try to change the topic or avoid Azar altogether.

After both sides rested, defendants moved for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. The trial justice found that the statute of limitations did not bar plaintiff's action with respect to the 2009 truancy charges, but did bar her claims for the 2006 truancy charges.[4] As a result, the trial justice considered whether plaintiff had satisfied her burden of proving that defendants subjected her to a hostile work environment such that a reasonable jury could find that defendants had discriminated against her based on her advocacy for her son. The trial justice concluded that plaintiff had not met that burden. He also analyzed whether plaintiff had met her burden under a retaliation claim analysis, ruling that the evidence showed that Lincoln had legal justification to bring the truancy charges based on her son's extended absence during the 2008-2009 school year. He found that the 2009 truancy charges were not in retaliation for Azar's advocacy for her son. The trial justice ultimately granted defendants' motion.

On appeal, plaintiff contends that the trial justice erred in granting the motion for judgment as a matter of law because, in her view, she presented sufficient evidence for a reasonable jury to find in her favor on her hostile work environment and retaliation claims.

---

[4] In ruling on the motion for judgment as a matter of law, the trial justice noted that the evidence, "although it[] [was] a little bit all over the lot," demonstrated that the second truancy action was filed in September 2009. At trial, plaintiff testified that she was arraigned on the charges on July 10, 2009, supported by an exhibit that identified that date. However, one of defendants' witnesses, Maryann Strubel, testified that the charges were filed in September 2009. At oral argument, defense counsel conceded that defendants do not press the argument that plaintiff's retaliation claim based on the 2009 truancy charges is time barred.

## II

### Standard of Review

"Our review of a trial justice's decision on a motion for judgment as a matter of law is *de novo*." *Roach v. State*, 157 A.3d 1042, 1049 (R.I. 2017) (quoting *McGarry v. Pielech*, 47 A.3d 271, 279 (R.I. 2012)). We examine the evidence "in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of the witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party." *McGarry*, 47 A.3d at 279 (quoting *Oliveira v. Jacobson*, 846 A.2d 822, 829 (R.I. 2004)). Accordingly, "[t]he trial justice may grant a [motion for judgment as a matter of law] if a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue * * *." *Tarzia v. State*, 44 A.3d 1245, 1252 (R.I. 2012) (quoting *Black v. Vaiciulis*, 934 A.2d 216, 219 (R.I. 2007) and Rule 50(a)(1)).

## III

### Discussion

### A

### Hostile Work Environment Claims

A hostile work environment claim is subject to a three-year statute of limitations pursuant to the RICRA. *See* § 42-112-2, as amended by P.L. 2009, ch. 368, § 1. We have not yet considered the applicable statute of limitations for employment discrimination actions brought pursuant to the CRPDA. *Henderson v. Fitzgerald*, 131 A.3d 172, 174 n. 2 (R.I. 2016). However, regardless of whether such claims are subject to a one-year or three-year statute of limitations, *see id.*, plaintiff's hostile work environment claims are barred because all the

occurrences she testified to occurred prior to her sick leave in October 2008,[5] well outside the three-year mark given that she filed suit in August 2012.[6] *See Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 406 (1st Cir. 2002) (explaining that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory [time] period" (quoting *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002))).

## B

## Retaliation Claims

## 1

## Exhaustion of Administrative Remedies pursuant to the CRPDA

Initially, plaintiff brought her retaliation claim pursuant to both the RICRA and the CRPDA. At trial, however, plaintiff's counsel appeared to concede that only the RICRA claim could survive because plaintiff had failed to exhaust her administrative remedies in accordance with the CRPDA.[7] Nothing in the record reflects that Azar ever filed a complaint with the Rhode Island Commission for Human Rights.

---

[5] Once plaintiff took leave from her job in October 2008, she never returned to teaching, and she resigned in 2011.

[6] The trial justice did note that plaintiff's leave from October 2008 until her resignation in 2011 was "fatal to her claim," but he did not appear to make his ruling based on the statute of limitations; instead, he concluded that Azar's claims failed because she did not produce evidence that rose to the level of a hostile work environment.

[7] At trial, plaintiff's counsel said the following:

> "[Defendants' Attorney]: * * * If [plaintiff's counsel] feels [failure to exhaust administrative remedies is] an affirmative defense, I'd make a motion to amend the answer to add it. I just think it's a prerequisite to the suit and we can get to this point without it.

The CRPDA provides that individuals may only bring an action for discrimination after "the commission for human rights has failed to act upon that person's complaint within sixty (60) days of filing, or the commission has issued a final order on the complaint." Section 42-87-4(b). "[A] plaintiff aggrieved by a state agency's action first must exhaust administrative remedies before bringing a claim in court." *Richardson v. Rhode Island Department of Education*, 947 A.2d 253, 259 (R.I. 2008) (quoting *Arnold v. Lebel*, 941 A.2d 813, 818 (R.I. 2007)). While we do "recognize[] an exception to the exhaustion requirement when * * * [it] 'would be futile,'" futility of exhausting administrative remedies generally applies in civil rights actions seeking an injunction. *Id.* (quoting *Arnold*, 941 A.2d at 818). On the contrary, we have held that the requirement that a party exhaust his or her administrative remedies is not futile in cases seeking actual damages. *Id.* at 260. Here, plaintiff sought actual and punitive damages, and, therefore, we conclude that there is no evidence that her pursuit of administrative remedies would have been futile. *See id.* at 259-60. Consequently, plaintiff's retaliation claim pursuant to the CRPDA is not viable because she failed to exhaust these remedies.

---

"THE COURT: How does that impact your case overall?

"[Plaintiff's Attorney]: Not really much.

"THE COURT: Not really much.

"[Plaintiff's Attorney]: The Rhode Island Civil Rights Act will cover."

## 2

### Retaliation Claim pursuant to the RICRA

Therefore, the only issue remaining is plaintiff's retaliation claim pursuant to the RICRA.[8]  In an employment discrimination action, "the parties must engage in the three-part burden-shifting paradigm set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 * * * (1973)." *McGarry*, 47 A.3d at 280.  First, an employee must establish a *prima facie* case.  *Id.*  In order to demonstrate a *prima facie* case of retaliation, "an employee must establish that '(1) [the employee] engaged in protected conduct; (2) [the employee] experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action.'"  *Shoucair v. Brown University*, 917 A.2d 418, 427 (R.I. 2007) (quoting *Calero-Cerezo v. United States Department of Justice*, 355 F.3d 6, 25 (1st Cir. 2004)).  Then, if successful, the burden shifts to the employer, "who must respond with some legitimate, nondiscriminatory reason for the act at issue."  *Id.*  Once the employer satisfies its burden of production, the employee has the responsibility to show "that the [employer's] tendered explanation is only a pretext and that discrimination was the true motive underlying the hiring decision."  *McGarry*, 47 A.3d at 281.

In this case, plaintiff contends that the adverse action by Lincoln was the filing of the 2009 truancy charges.  In essence, she argues that Lincoln filed the charges only because of her disagreement with her son's educational placement.  For purposes of our analysis, we assume

---

[8] We acknowledge that the truancy charges were filed in 2009, after plaintiff was already on leave from her employment; but, because she was still receiving sick pay benefits from Lincoln, we assume without deciding that she was still an employee of Lincoln for purposes of her retaliation claim.

that plaintiff demonstrated a *prima facie* case of retaliation.[9]  *See McGarry*, 47 A.3d at 281. With the burden now shifted to the employer, we conclude that Lincoln satisfied its requirement to provide the trial justice with a "legitimate, nondiscriminatory reason" for bringing the truancy charges pursuant to G.L. 1956 § 16-19-1.[10]  *See Shoucair*, 917 A.2d at 427.  The evidence established that Azar's son did not attend school for nearly an entire school year, as plaintiff herself testified.  The trial justice correctly explained that Lincoln had legal justification to bring the charges, commenting that even the Family Court justice recognized the need to file such charges.  We agree that Lincoln appropriately filed the 2009 charges in accordance with § 16-19-1 based, in part, on plaintiff's own testimony of her son's extended absence from school. *See* § 16-19-1.

In response to Lincoln's nondiscriminatory reason for the truancy charges, the plaintiff failed to put forth any evidence that its reason was pretextual and that "discrimination was the true motive underlying" the filing of the charges.  *McGarry*, 47 A.3d at 281.  Lincoln eventually dismissed the charges, but it is mere conjecture to say that the dismissal was due to anything

---

[9] When ruling on defendants' motion for judgment as a matter of law, the trial justice noted that he was assuming that plaintiff's claims were validly brought pursuant to the RICRA, even though the act does not explicitly protect those individuals who advocate on behalf of a person with disabilities and are not themselves disabled, such as plaintiff.  *But see* G.L. 1956 § 42-87-3(5).

[10] General Laws 1956 § 16-19-1(a) provides, in pertinent part, that every child

> "shall regularly attend some public day school during all the days
> and hours that the public schools are in session in the city or town
> in which the child resides.  Every person having under his or her
> control a child * * * shall cause the child to attend school as
> required by this section, and for every neglect of this duty, the
> person having control of the child shall be fined not exceeding fifty
> dollars ($50.00) for each day, or part of a day, that the child fails to
> attend school, and if the total of these days is more than thirty (30)
> school days during any school year, then the person shall, upon
> conviction, be imprisoned not exceeding six (6) months or shall be
> fined not more than five hundred dollars ($500), or both * * *."

more than Lincoln being satisfied that Azar's son was back in school. Like the trial justice, we agree that the dismissal of the charges was simply evidence that "the parties were working towards a solution to [Azar's son's] appropriate educational placement." The evidence is insufficient to illustrate any retaliatory action on Lincoln's part. *See Shoucair*, 917 A.2d at 429 ("To meet his [or her] burden, [a plaintiff] ha[s] to 'do more than simply cast doubt upon the employer's justification.'" (quoting *Center for Behavioral Heath, Rhode Island, Inc. v. Barros*, 710 A.2d 680, 685 (R.I. 1998))). Therefore, after examining the evidence "in the light most favorable to [the plaintiff]," we conclude that the plaintiff failed to provide sufficient evidence such that a reasonable jury could find that Lincoln's actions were retaliation for the plaintiff's advocacy efforts for her son. *See McGarry*, 47 A.3d at 279 (quoting *Oliveira*, 846 A.2d at 829).

## IV

### Conclusion

Accordingly, the Superior Court's judgment is affirmed. The record may be returned to that tribunal.


Justice Goldberg participated on the basis of the briefs.

Justice Flaherty did not participate.

**SUPREME COURT – CLERK'S OFFICE**

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Pamela Azar v. Town of Lincoln, et al. |
| **Case Number** | No. 2016-267-Appeal. (PC 12-4093) |
| **Date Opinion Filed** | December 7, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennett R. Gallo |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Pamela M. Azar, Pro Se <br><br> For Defendants: <br><br> Kathleen A. Hilton, Esq. <br> Marc Desisto, Esq. <br> Andrew Henneous, Esq. |