**Supreme Court**

No. 2011-142-Appeal.

(PC 06-3975)

Cheryl D. Mead               :

v.               :

Sanofi-Aventis U.S., Inc., et al.      :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Cheryl D. Mead           :

v.                  :

Sanofi-Aventis U.S., Inc., et al.     :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  Cheryl D. Mead (Mead or plaintiff) appeals from the Superior Court's denial of her motion for a new trial.  Mead argues that the trial justice erred in denying that motion because the evidence preponderated against the jury's verdict.  This case came before the Supreme Court on February 28, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After hearing the arguments of counsel and reviewing the memoranda submitted on behalf of the parties, we are satisfied that cause has not been shown.  Accordingly, we shall decide the appeal at this time without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### I

### Facts and Travel

The section of U.S. Route 44 that runs through East Providence is known as Taunton Avenue.  That stretch of the road traverses a commercial area where pedestrian traffic is not unusual.  It is a two-lane road divided by a double yellow line with parking on both sides, and features several crosswalks.

At approximately 2 p.m. on August 26, 2005, Mead was crossing Taunton Avenue on foot when she was struck by a sport-utility vehicle traveling in the eastbound lane, driven by defendant, Eric J. McNamara (McNamara or defendant). Mead was struck as she attempted to cross from a Shell gas station, on the southerly side of Taunton Avenue, to Sovereign Bank, on the northerly side, where she was employed at the time. Tragically, the extent of Mead's injuries required doctors to amputate her left leg above the knee.

On July 31, 2006, Mead filed a complaint in the Providence County Superior Court against McNamara, alleging negligence. She also named ARI Fleet LT, Inc., the owner of the vehicle, as a defendant. In 2008, she amended her complaint, removing ARI Fleet LT, Inc. and naming Sanofi-Aventis U.S., Inc., McNamara's employer at the time of the accident, as a defendant. (McNamara had been on his way to a sales appointment on behalf of Sanofi-Aventis U.S., Inc. when the accident occurred.)

A jury trial commenced on June 21, 2010. We summarize below the relevant, and at times conflicting, testimony adduced at trial. Because this appeal does not involve a question as to damages, we do not discuss any testimony regarding the extent of Mead's injuries.

Mead, McNamara, and Michael DaSilva, an eyewitness to the accident, testified at trial. The deposition testimony of a second eyewitness, Jason Gomes, was read to the jury. Additionally, the video deposition testimony of a third eyewitness, Helder Cunha, was also played for the jury.

Mead testified that she did not remember anything about the accident itself or the immediately preceding events. She stated, though, that she regularly crossed Taunton Avenue to visit the convenience store at the Shell gas station across the street from Sovereign Bank. She further acknowledged that there was not a crosswalk between the bank and the gas station;

however, she averred that, before crossing that part of Taunton Avenue, she customarily would "[w]ait, see if cars were coming, and then cross."

DaSilva testified that, on the day of the accident, he was driving in the westbound lane of Taunton Avenue.[1] He recalled that it "was a medium traffic day" and that "[traffic] was just starting to pick up" before the accident. While driving, he saw Mead walk toward the edge of the street, come to a stop, and "look[ ] both ways" as she waited to cross. However, on cross-examination, DaSilva was confronted with his deposition testimony, in which he stated that he had not observed Mead look to both her left and her right before crossing the street.

DaSilva further testified that, upon noticing Mead waiting to cross, he stopped his car, made eye contact with her, extended his arm out the window of his car, and waved for her to cross. He stated that he did so "because there was plenty of time for her to cross in [his] mind." He acknowledged, though, that before he waved her across, he observed McNamara's "blue Ford vehicle," which was stopped at a traffic light. He recalled that McNamara's vehicle was headed in the opposite direction and was about "a quarter of a mile down the road" when he waved for Mead to cross. DaSilva was later impeached on this point with his deposition testimony, in which he stated that McNamara's vehicle had traveled only about two or three car lengths before hitting Mead.

DaSilva testified that, after he waved for Mead to cross, she then walked between two vehicles parked on the southerly side of Taunton Avenue—a red truck and a silver car—as she entered the street. He recalled that Mead began to cross at a "fast[-]paced walk" and that she took only "two or three steps" into the street before McNamara's vehicle struck her, which

---

[1] DaSilva actually testified that he was driving east on Taunton Avenue; however, he also stated that he was traveling from Seekonk, Massachusetts, toward Providence, Rhode Island. We therefore have inferred that DaSilva was in fact traveling in the westbound lane of Taunton Avenue. This inference has been corroborated by the other eyewitness testimony.

caused her to "fl[y] through the air." DaSilva testified that he did not hear McNamara's vehicle skid before striking Mead and did not see any skid marks on the street after the accident.

As stated above, Cunha's video deposition testimony was played for the jury. Cunha testified that he was driving behind DaSilva's vehicle in the westbound lane when the accident occurred. He recalled that, because it was "rush hour," the traffic was moving at a "relatively slow" rate of speed. As Cunha approached behind DaSilva's vehicle, he noticed Mead standing in the street "within half a foot" of the curb in front of a parked red truck. He testified that he observed Mead "looking at traffic, and * * * waiting for an opportunity to cross." He further testified that "[a]t no point did [Mead] acknowledge eastbound" traffic while she waited to cross. Cunha stated that he then stopped his car behind DaSilva's for approximately "twenty to sixty seconds" and that he saw DaSilva wave Mead across the street.

According to Cunha, Mead then acknowledged DaSilva's wave by "wav[ing] her right hand saying, basically, thank you." Cunha testified that, after Mead acknowledged DaSilva's wave, she then "sprint[ed]" across the street and took approximately "[t]hree to four" steps into the street before McNamara's vehicle struck her, causing her to "cartwheel in the air." He further noted that Mead did not "take into consideration oncoming traffic" before she "popped right out" into the street. Cunha, like DaSilva, testified that he did not hear McNamara's vehicle skid and did not notice any skid marks in the street after the accident. He recalled that he did not observe McNamara's vehicle before it actually struck Mead.

McNamara testified that, just before the accident, he was traveling in the eastbound lane of Taunton Avenue in a blue Ford Escape. Consistent with the testimony of the other witnesses, he testified that the traffic that day was "steady" and "heavy." He recalled that his vehicle was the first one stopped at a traffic light "down near [c]ity [h]all," which he estimated was about

- 4 -

"500 or 600 feet" from where his vehicle struck Mead. After that traffic light changed to green, McNamara traveled at a speed of "between 20 [to] 25 miles per hour" for approximately ten to fifteen seconds. McNamara recalled that just prior to the accident he "saw traffic" in the westbound lane; however, he equivocated when asked whether he observed DaSilva's vehicle stopped in that lane. He never stated that he saw DaSilva waving to Mead to cross the street, or acknowledged that he ever saw Mead standing on the side of Taunton Avenue.

According to McNamara, Mead suddenly emerged from between two parked vehicles located to the right of his vehicle. He testified that he saw Mead for "[m]aybe a second" before his vehicle struck her. He then stopped his vehicle at "just about the point of impact." He recalled that, when his vehicle struck Mead, she "went onto [his] hood and then was projected forward and landed on the ground." He testified that Mead was not in a crosswalk when the accident occurred.

As previously noted, Gomes's deposition testimony was read to the jury. He testified that, immediately before the accident, he was driving about two car lengths behind McNamara's vehicle in the eastbound lane. He "vaguely" remembered approaching the traffic light near city hall but could not remember whether that traffic light was green or red at the time or if he had stopped his vehicle there. He also stated that there was a "steady flow" of traffic, that he was driving "[t]wenty-five miles an hour," and that McNamara's vehicle was traveling at "[a]round the same" rate of speed.

Gomes testified that he observed Mead "right through the * * * rear window" of one of the parked vehicles on his right. He stated that he saw Mead walk from the gas station toward the street and that Mead did not look in the direction from which he and McNamara approached before she began to cross. According to Gomes, Mead "just didn't stop" before crossing the

street. Consistent with McNamara's testimony, Gomes testified that he did not see DaSilva's vehicle stopped in the opposite lane and did not see DaSilva wave at Mead to cross the street. Gomes testified that he then saw Mead take approximately "two steps" into the street before she was struck by McNamara's vehicle. He recalled that he could clearly see Mead as she was struck.

On June 29, 2010, after seven days of trial, the jury returned a verdict in favor of defendants. Mead then moved for a new trial, pursuant to Rule 59 of the Superior Court Rules of Civil Procedure. On July 7, 2010, after hearing arguments, the trial justice denied Mead's motion for a new trial. In her bench decision, the trial justice found that "[t]he evidence on liability was conflicting" and that "none of the witnesses w[as] entirely credible." She noted that McNamara "equivocated when asked if he saw the DaSilva vehicle stopped" and that the evidence about whether Mead stopped to look at eastbound traffic before she attempted to cross the street was contradictory.

Likewise, the trial justice did not find DaSilva to be a credible witness, noting that his testimony was "successfully impeached on several points." Additionally, the trial justice recognized that DaSilva had a possible "motive to color the events," given that he was responsible for waving Mead across the street, where she ultimately suffered serious injuries. She noted that, at the time of the accident, DaSilva "was young and presumably a fairly inexperienced driver," so he was likely not "thinking of oncoming traffic when he waved [Mead across]."[2] The trial justice therefore "gave no weight to" DaSilva's testimony that it was safe for Mead to cross the street. Moreover, the trial justice stated that Mead was struck after taking only

---

[2] The trial justice indicated that DaSilva was eighteen or nineteen years old at the time of the accident.

a few steps into the street, which clearly indicated that it was not actually safe for her to have crossed.

Importantly, although the trial justice found that DaSilva had stopped to allow Mead to cross and that two other eyewitnesses also observed Mead attempting to cross the street, in her view, "that [did not] necessarily mean" that McNamara could have also seen Mead from his vantage point. The trial justice further relied on Cunha's testimony that "there was no screech of brakes, [and] no skid marks" in inferring that McNamara "never had a chance to apply his brakes before he hit [Mead]."

The trial justice determined that "it was impossible to say that the evidence preponderated in [Mead's] favor on the question of negligence and proximate cause." She stated that she was "unable to add to the evidence by drawing inferences favorable to the plaintiff" because there was not enough evidence "to conclude that McNamara was doing something other than what he should [have been] doing," such as "speeding" or "reading a map." She also stated that, even if she were to find that McNamara was negligent, she "couldn't conclude that [this] negligence was necessarily a proximate cause of the accident."

In sum, the trial justice concluded that "reasonable minds could differ over this evidence" and that she "would not have reached a different result" from that reached by the jury. Accordingly, she denied Mead's motion for a new trial. An order to that effect was entered on July 15, 2010. Mead then timely appealed to this Court.

**II**

**Issues on Appeal**

On appeal, Mead contends that the trial justice erred in denying her motion for a new trial because the evidence preponderated against the jury's verdict. In support of this argument, Mead

- 7 -

asserts that the trial justice failed to give sufficient weight to the evidence that DaSilva, Gomes, and Cunha—three eyewitnesses who each viewed the accident from different vantage points—all observed her while she attempted to cross the street before McNamara's vehicle struck her. In light of this uncontroverted testimony, Mead avers that the jury should have concluded that McNamara likewise should have seen her as she attempted to cross and that his failure to keep a proper lookout proved that he was negligent in striking her.

Further, Mead argues that the trial justice overlooked the police photographs that were submitted into evidence. Mead contends that the location of McNamara's vehicle—near the double yellow line on Taunton Avenue—demonstrates that she must have been further than a few steps into the street when she was struck. According to Mead, these photographs show that McNamara had time to avoid striking her and that therefore he was negligent.

Countering Mead's contentions on appeal, defendants maintain that the trial justice did not err in denying her motion for a new trial. They point out that Mead presented no evidence that McNamara was speeding or was otherwise negligent. Moreover, the evidence adduced at trial indicated that McNamara had no time to avoid striking her. The defendants emphasize that the evidence overwhelmingly demonstrates that Mead caused the accident by darting out into the street without looking to see whether any vehicles were approaching in the eastbound lane. They further maintain that the photographic evidence does not prove that McNamara was negligent. Indeed, defendants contend that the photographs corroborate the eyewitness testimony that Mead took only a few steps into the street before she was struck by the right side of McNamara's vehicle.

### III

### Standard of Review

In deciding whether to grant a motion for a new trial, a trial justice, in the exercise of his or her independent judgment, assumes the role "of a superjuror, who must weigh the evidence and assess the credibility of the witnesses." McGarry v. Pielech, 47 A.3d 271, 280 (R.I. 2012) (quoting Pollard v. Hastings, 862 A.2d 770, 777 (R.I. 2004)). In so doing, the trial justice draws reasonable inferences in order to determine whether or not reasonable minds could disagree and reach different conclusions based on the evidence. Yi Gu v. Rhode Island Public Transit Authority, 38 A.3d 1093, 1099 (R.I. 2012) (citing Ruggieri v. Big G Supermarkets, Inc., 114 R.I. 211, 216, 330 A.2d 810, 812 (1975) and Botelho v. Caster's, Inc., 970 A.2d 541, 545 (R.I. 2009)). "If the trial justice is persuaded that 'the verdict is wrong because it fails to respond truly to the merits and to administer substantial justice between the parties or is against the fair preponderance of the evidence, he [or she] should set aside the verdict and order a new trial.'" McGarry, 47 A.3d at 280 (quoting Morgera v. Hanover Insurance Co., 655 A.2d 698, 698 (R.I. 1995) (mem.)).

This Court reviews a trial justice's decision to grant or deny a motion for a new trial with "great deference." Bajakian v. Erinakes, 880 A.2d 843, 852 (R.I. 2005) (citing Donnelly v. Grey Goose Lines, Inc., 667 A.2d 792, 794-95 (R.I. 1995)). We will not reverse such a decision unless he or she "overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." Yi Gu, 38 A.3d at 1099 (quoting Izen v. Winoker, 589 A.2d 824, 829 (R.I. 1991)).

# IV

## Discussion

After carefully reviewing the record in this case, we cannot disagree with the trial justice's conclusion that Mead failed to prove by a preponderance of the evidence that McNamara was negligent. The trial justice stated:

> "The mere fact that [McNamara] didn't see [Mead attempting to cross the street] does not necessarily mean that he was negligent. The fact finders are required to view evidence in the light of their common sense. We all know that drivers * * * can't sweep with their eyes constantly. They look here. They look there. They look down the road. They perceive something. They might misperceive something else. It's all happening very, very quickly, even at slow speeds. The problem is we don't really know what happened here. We know that he didn't see her, but the mere fact that he didn't see her doesn't necessarily mean he breached his duty to look and to try to see, digest and comprehend everything that was going on around him."

Although three eyewitnesses apparently saw Mead waiting to cross the street, the trial justice reasoned that this did not establish McNamara's negligence in failing to observe her. We agree.

We likewise cannot say that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong in making credibility determinations. She recognized DaSilva's "motive to color the events" surrounding the accident because he had encouraged Mead to cross the street when it was not safe for her to have done so. She also found that various witnesses had testified inconsistently as to whether Mead actually stopped and looked to her left, in the direction of eastbound traffic, before crossing Taunton Avenue. Finally, the trial justice stated that, based on the evidence presented, she could not conclude that McNamara was speeding or doing anything—such as reading a map or looking for a radio station—that would have distracted his attention from the road ahead. The trial justice properly assessed each

witness's credibility and testimony and determined that Mead had not presented sufficient evidence to prove that McNamara was negligent.

Furthermore, we do not agree with Mead's argument that the trial justice overlooked or misconceived material and relevant evidence in not addressing the photographs (taken immediately after the accident occurred) in her decision denying Mead's motion for a new trial.[3] During the trial, Mead's counsel had introduced the photographs to show the jury where the various witnesses were positioned at the approximate time of the accident, as well as to show the jury where each witness claimed Mead was standing before she attempted to cross the street. Mead now uses those photographs to raise a novel argument to this Court. She contends that the location of McNamara's vehicle after the accident, as portrayed in those photographs, demonstrates that McNamara must have been negligent in striking her.

However, our review of the record reveals that Mead failed to raise that argument below. It is well settled "that a matter not raised before the trial court may not be raised for the first time on appeal." Moreau v. Flanders, 15 A.3d 565, 586-87 (R.I. 2011) (quoting Chase v. Bouchard, 671 A.2d 794, 795 (R.I. 1996)). We therefore deem Mead's argument—that the photographs demonstrate McNamara's negligence—to be waived.

In sum, we hold that the trial justice was not clearly wrong in ruling that reasonable minds could disagree about whether McNamara could or should have seen Mead before his vehicle struck her. Further, the trial justice did not overlook material evidence when she did not

---

[3] Although the photographs were not explicitly admitted as full exhibits in the record, they were marked as such. Given the stenographer's note at the beginning of the transcript that "other exhibits were marked off the record," as well as the use of the photographs in each witness's testimony at trial, we infer that these photographs were, in fact, admitted as full exhibits before trial and would have been available to the trial justice in considering Mead's motion for a new trial.

specifically address the photographs.  Accordingly, the trial justice did not err in denying Mead's motion for a new trial.

## V

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court, to which we remand the record in this case.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Cheryl D. Mead v. Sanofi-Aventis U.S., Inc., et al.

**CASE NO:**      No. 2011-142-Appeal.
(PC 06-3975)

**COURT:**      Supreme Court

**DATE OPINION FILED:**      March 28, 2013

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**      Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**      Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Patricia A. Hurst

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Joseph R. Palumbo, Jr., Esq.

For Defendant:  John A. McQueeney, Jr., Esq.