

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-3-2008

# Sarmiento v. Montclair State Univ

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2475

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Sarmiento v. Montclair State Univ" (2008). *2008 Decisions.* Paper 904.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/904

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2475
_____

ESTEBAN E. SARMIENTO,

                                                    Appellant

v.

MONTCLAIR STATE UNIVERSITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 04-cv-04176)
District Judge:  Honorable William J. Martini

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 2, 2008

Before: RENDELL, JORDAN and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed July 3, 2008)
_____

OPINION
_____

PER CURIAM

      Esteban Sarmiento, a Hispanic male, brought a suit against Montclair State

University ("MSU") alleging employment discrimination in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII").  He claimed in his <u>pro</u> <u>se</u> complaint that MSU's

decision not to hire him as an associate professor constituted intentional discrimination on

the basis of race, color or national origin. The United States District Court for the District of New Jersey granted MSU's motion for summary judgment on that claim, and Sarmiento now appeals that decision. For the following reasons, we will affirm the judgment of the District Court.

## I.       Factual and Procedural Background

Sarmiento received his Ph.D. in biological anthropology in 1985 and since that time he has been employed as a research associate at the American Museum of Natural History. He has also taught at various colleges and universities in the United States and abroad. In 2001, he applied for a position as an associate professor in MSU's anthropology department. MSU circulated two job announcements describing the position. The shorter announcement stated that the opening was for a tenure-track position in biological anthropology with a focus on teaching introductory physical anthropology as a laboratory science. The document also indicated that the successful candidate would teach human variation and medical anthropology. As for qualifications, the announcement specified that a Ph.D. was required as well as publications and a demonstrated record of success in teaching, research, and professional activities. Candidates were also required to be committed to using information technology in teaching and research and to have the potential or a demonstrated ability to obtain external funding. The document further indicated that the department expected the successful candidate to exhibit excellence in teaching, scholarship, and service to the department, university, community, and profession.

MSU also circulated a second document containing a more detailed description of the position. This document stated that the successful candidate should be prepared to teach introductory and upper-division courses for majors and for general education, teach masters-level seminars in the department's applied anthropology program, supervise masters treatises in applied medical anthropology, and develop new courses appropriate to the needs of the department in the area of specialization. The document also stated that candidates must be committed to involving students in research and must demonstrate the potential to write successful grant applications.

The job postings generated approximately fifty-two applications, which were reviewed by a hiring committee consisting of six full-time faculty members of MSU's anthropology department. During its review of the applications, the committee employed a screening instrument which called for an evaluation of each candidate on the basis of three criteria: (1) closeness of fit to job description; (2) academic achievement (publications, conference presentations, etc.); and (3) evidence of teaching performance (if submitted). The screening instrument directed each committee member to rank the applicants from 1 to 10 or as "below 10." The screening instrument also directed committee members to discuss all applicants who appeared on more than one top-ten list, with the goal of narrowing the list to three candidates who would be contacted for in-person interviews. Following its analysis of the qualifications of the applicants, the committee decided to interview three candidates: Julie Farnum, a Caucasian female;

Teresa Leslie, an African-American female, and Sheila Jeffers, an African-American female. Farnum was eventually hired for the position.

Shortly after learning of MSU's hiring decision, Sarmiento filed a charge of discrimination in the EEOC. The EEOC issued a right-to-sue letter, which led to the filing of the Title VII complaint in the District Court.[1] The District Court granted MSU's motion for summary judgment on the Title VII claim, concluding that Sarmiento had not met his burden of submitting evidence from which a reasonable factfinder could conclude that MSU's nondiscriminatory reasons for denying him employment were pretextual.[2]

## II.    Analysis

We have jurisdiction over the appeal under 28 U.S.C. § 1291 and exercise plenary review over the District Court's decision to grant summary judgment. McGreevey v. Stoup, 413 F.3d 359, 363 (3d Cir. 2005). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A

---

[1] Sarmiento's complaint also raised claims under 42 U.S.C. § 1981, the Age Discrimination in Employment Act, and New Jersey's Law Against Discrimination. The District Court dismissed those claims in 2005 on the basis of sovereign immunity, and Sarmiento does not challenge those rulings on appeal.

[2] Sarmiento moved for reconsideration in the District Court after filing his notice of appeal of the District Court's order granting summary judgment. The District Court noted that the motion was procedurally improper, but proceeded to deny it on the merits. The issue of whether the District Court erred in denying reconsideration is not before us, since Sarmiento did not appeal from that order.

court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

As Sarmiento did not submit direct evidence of discriminatory behavior, the District Court appropriately analyzed his Title VII claim under the familiar burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, a plaintiff challenging a hiring decision has the initial burden of establishing a prima facie case of discrimination. See id. at 802. The burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for the hiring decision. See Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997). Once that burden is met, the plaintiff must establish by a preponderance of the evidence that the nondiscriminatory reasons articulated by the employer are pretextual. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999). To defeat summary judgment, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d

5

759, 764 (3d Cir. 1994). More particularly, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Id. at 765 (internal quotations and citations omitted).

### A.     Plaintiff's Prima Facie Case and Defendant's Nondiscriminatory Rationale

The District Court determined that Sarmiento satisfied the elements of a prima facie case by demonstrating that he was qualified for the associate professor position and that the position was offered to a non-Hispanic candidate. MSU does not contest that determination on appeal, so we will turn our attention to the other steps of the McDonnell Douglas analysis.

Sarmiento claims that the District Court erroneously determined that MSU satisfied its burden of articulating nondiscriminatory reasons for its hiring decision. He argues that MSU did not provide any such reasons and that the District Court combed the record and gave its own explanation as to why he was denied an interview. This assertion, that MSU did not meet its burden of production under this step of the McDonnell Douglas analysis, is plainly without merit. MSU argued in its summary judgment brief that, even if the District Court accepted that Sarmiento could establish a prima facie case of discrimination, the university articulated a legitimate reason for its

6

actions, in that Sarmiento's qualifications did not fit within the qualifications sought by the department. MSU elaborated upon this point in its statement of undisputed material facts, explaining that Sarmiento was not selected because his application materials indicated that his research and skills were not well suited to the interests of the department and the needs of the students, in comparison with the three candidates who were selected for an interview. MSU supported this statement by citing to the deposition testimony of Dr. Richard Franke, a professor of anthropology at MSU who chaired the hiring committee at the time it reviewed Sarmiento's application. In the cited portions of the deposition transcript, Franke testified that Sarmiento's application materials indicated that his research focused on the study of great apes, in addition to anatomy and surgery, whereas the department was looking for a candidate whose area of expertise involved the study of the social and cultural aspects of disease or health patterns. MSU further explained in its statement of undisputed material facts that Sarmiento's application was rejected partly because he provided little evidence of successful teaching performance. These reasons are consistent with those provided by MSU in the reports to the EEOC that were submitted as part of the record on summary judgment. The District Court properly cited these reasons in support of its conclusion that MSU articulated a non-discriminatory rationale for the hiring decision. Thus, we do not believe that the District Court relieved MSU from satisfying its burden at this stage. See Woodson v. Scott Paper Co.,109 F.3d 913, 920 n.2 (3d Cir. 1997) (stating that a "defendant's burden at this stage is relatively

7

light . . . [and is] satisfied if the defendant articulates any legitimate reason" for the hiring decision).

## B.    Pretext

Turning to the issue of pretext, we first address Sarmiento's contention that summary judgment was inappropriate because a trier of fact could disbelieve MSU's rationale for its hiring decision simply because that rationale was advanced by "interested witnesses." He reasons that, because MSU's explanation is entirely based on credibility-dependent assertions by agents and decision-makers of the university, he need not set forth any additional evidence in order to create a triable issue of fact. We reject that argument, as it fails to take into account that a Title VII plaintiff bears the ultimate burden of persuasion under McDonnell Douglas to cast doubt on the legitimacy of an employer's nondiscriminatory justification. See Traylor v. Brown, 295 F.3d 783, 791 (7th Cir. 2002); Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 898 (5th Cir. 2002); see also Sarmiento v. Queens College CUNY, 386 F. Supp. 2d 93, 96 n.2 (E.D.N.Y. 2005) (rejecting similar argument advanced by Appellant), aff'd, 153 Fed. App'x 21 (2d Cir. Oct. 28, 2005). We therefore proceed to consider whether Sarmiento has made an adequate showing of pretext.

### 1.    Departmental Fit

In addressing MSU's assertion that the anthropology department was looking for a candidate whose area of expertise involved the study of the relationship between human society and disease, Sarmiento claims that this rationale is suspect because neither of the

position announcements mentioned such a preference. As the District Court explained, however, the fact that MSU justified its decision by referring to Sarmiento's failure to satisfy a departmental preference that was not precisely articulated in the position announcements is insufficient to show pretext, given the absence of evidence in the record indicating that MSU acted irrationally or arbitrarily in invoking that criterion. See Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 647 (3d Cir. 1998) (stating that a plaintiff challenging an employer's reliance on a stated criterion must adduce "evidence from which a factfinder could reasonably infer that the plaintiff satisfied the criterion identified by the employer or that the employer did not actually rely upon the stated criterion"); see also Jackson v. Gonzales, 496 F.3d 703, 709 (D.C. Cir. 2007) (stating that "[t]he fact that an employer based its ultimate hiring decision on one or more specific factors encompassed within a broader and more general job description does not itself raise an inference of discrimination sufficient to overcome summary judgment"). Franke presented uncontradicted testimony that the hiring committee preferred a candidate "who showed a clear interest in the relation between human society and culture and patterns of health and disease" because such a candidate better fit the academic and pedagogical needs of the anthropology department and the university.[3] MSU also

_____

[3] Sarmiento notes that the screening instrument directed members of the hiring committee to consider only three criteria when reviewing an application (i.e., closeness of fit to job description, academic achievement, and teaching performance, if applicable) and did not call for an evaluation of an applicant's credentials with reference to the departmental preferences stated by Franke. We do not believe the contents of the screening instrument give rise to a reasonable inference of pretext, as there is no

explained why the finalists were better suited to the position than Sarmiento, and those reasons are fully recounted in Section III.A of the District Court's opinion. Although Sarmiento challenges, in a conclusory fashion, the correctness of the hiring committee's determination that his area of specialization made him less appropriate for the position than the three finalists, he does not cite to any evidence or any discrepancies in the record that would cause a reasonable factfinder to question the sincerity of MSU's explanation. Sarmiento's claim that MSU invoked this preference solely for the purpose of excluding his application is entirely conjectural.

### 2.  Teaching Experience

Sarmiento has also failed to cast doubt on the legitimacy of MSU's other nondisciminatory rationale, which addressed his lack of relevant teaching experience. Although Sarmiento indicated in his cover letter that he had seventeen years of experience teaching introductory and upper-level courses in biological anthropology at the university level and had experience supervising masters theses, MSU correctly noted that he had not taught an undergraduate course in anthropology since 1988 and had not taught a university course since 1997. In contrast, all three finalists indicated in their applications that they were teaching at colleges or universities at the time they applied for the position in 2001. MSU also explained that Sarmiento's application did not indicate

---

indication from that document or from anything else in the record that the hiring committee could not or did not consider those preferences when evaluating whether a qualified applicant should advance in the hiring process.

10

that he was qualified to teach a course in human variation, medical anthropology, or related areas. Furthermore, Franke testified that the hiring committee believed that Sarmiento's statement in his cover letter citing his experience teaching masters-level courses in surgery and anatomy and supervising masters theses that addressed solutions to third-world medical and surgical problems did not closely fit the needs of the department. Sarmiento suggests that the university's reasons for discounting his teaching experience are suspect because the three finalists also lacked experience in teaching all or some of the courses listed in the position announcements, did not have seventeen years' teaching experience, and presented no evidence that they had taught or supervised graduate students. However, we find nothing inappropriate in MSU's analysis of the teaching experience of the candidates. It is undisputed that MSU did not require applicants to show a specific type of teaching experience in order to qualify for the position; the long position announcement merely stated that the successful candidate should be prepared to carry out the listed teaching and supervisory responsibilities. MSU explained that Sarmiento's teaching record was not viewed favorably when compared with the more germane research and teaching experience of the three finalists, and we do not believe the record contains evidence suggesting that this nondiscriminatory explanation is so plainly wrong that it cannot have been a factor in MSU's decision not to interview Sarmiento. See Keller, 130 F.3d at 1109.

C.    Spoliation

11

Sarmiento further argues that he is entitled to a spoliation inference based on MSU's loss or destruction of documentary evidence pertaining to the hiring process, including the written notes of the hiring committee and portions of Farnum's application materials. MSU claims that it destroyed the hiring committee notes pursuant to departmental policy shortly after the position was filled. Sarmiento believes that these notes might have indicated that he was rated higher than the finalists in the categories of job fit and teaching experience. We agree with the District Court that, even if Sarmiento could satisfy the elements of a spoliation claim with regard to the hiring committee notes, MSU would still be entitled to summary judgment. While these missing documents might have been relevant to his Title VII claim, we are not persuaded that the absence of this evidence creates a genuine issue as to pretext. The Second Circuit has acknowledged that "[i]n borderline [Title VII] cases, an inference of spoliation, in combination with 'some (not insubstantial) evidence' for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) (quoting Kronisch v. United States, 150 F.3d 112, 128 (2d Cir. 1998)). We believe the District Court correctly acknowledged that this is not a borderline case. Given that Sarmiento has failed to cast meaningful doubt on any of the core facts underlying the nondiscriminatory rationale proffered by MSU, we believe that any inference that the university destroyed the committee notes with a view towards concealing unlawful discrimination would be highly speculative. As for the missing

12

application materials, we agree with the District Court that these documents are of marginal relevance and their absence does not create a genuine issue of material fact.[4]

## D. Exclusion of Expert Report

Sarmiento also challenges the District Court's refusal to consider a report prepared by Dr. Ralph Holloway of the Department of Anthropology at Columbia University. In the report, Holloway conducted a detailed analysis of the relative credentials of Sarmiento and the three finalists and opined that "there is no clear objective reason as to why Dr. Sarmiento was not brought in to interview for the . . . position at [MSU], why the other three candidates brought in to interview were rated above him, and why he was not offered the position." The District Court determined that the report did not comply with FED. R. CIV. P. 56(e) because it was unsworn, not in the form of an affidavit, and gave no indication that Holloway was competent to render an opinion on the matters discussed in the report.[5] Sarmiento argues on appeal that the District Court should have given him an

---

[4] Sarmiento also cites to what he perceives as other irregularities in the hiring process. For instance, he alleges that none of the finalists met all the qualifications specified in the position announcements and that portions of Franke's deposition testimony are materially inconsistent with statements made by MSU in its initial report to the EEOC. We believe the District Court gave due consideration to these allegations and properly concluded that they lacked an adequate factual basis. To the extent there is record support for any of the other minor discrepancies cited by Sarmiento, we agree with the District Court that their combined impact is negligible when viewed in light of the record as a whole.

[5] Approximately twenty-one days after the District Court issued its order granting summary judgment, Sarmiento filed a motion under FED. R. CIV. P. 60(b) in which he requested that the District Court reconsider its exclusion of Holloway's report. He argued that his failure to comply with Rule 56(e) was due to excusable neglect, and he attempted to cure the defect in the submission by attaching a copy of Holloway's curriculum vitae,

13

opportunity to cure the defect in his submission out of deference to his pro se status. He also points out that MSU never objected to Holloway's report on Rule 56(e) grounds.

We need not address whether the District Court improperly denied Sarmiento an opportunity to amend his submission to comply with the requirements of Rule 56(e) because, for substantially the reasons given in the District Court's letter opinion dated September 4, 2007, we do not believe that the contents of the report are relevant to the question of whether summary judgment was properly granted. As the District Court explained, Holloway merely offered his own subjective assessment as to how MSU should have evaluated the credentials of the candidates under the screening criteria and did not even acknowledge, let alone criticize, MSU's explanation why it viewed Sarmiento as a weaker candidate than the three finalists. While the report might suggest that MSU acted imprudently by choosing not to interview Sarmiento, it does not reasonably support an inference that the rationale articulated by MSU is unworthy of credence.

## III.    Conclusion

After thoroughly reviewing the record, we conclude that the District Court properly determined that Sarmiento did not demonstrate the existence of a genuine issue

---

which was not part of the record on summary judgment. The District Court denied the motion, concluding that Sarmiento had not presented a valid excuse as to why he did not initially comply with Rule 56(e), and that, even if the report were properly submitted on summary judgment, it would not have altered the outcome of the motion.

of material fact with regard to his Title VII claim. Accordingly, we will affirm the

judgment of the District Court. Appellant's motion to supplement the record is denied.