**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4053-18T2

RAYMOND L. CAPRA,

    Plaintiff-Appellant,

v.

SETON HALL UNIVERSITY,
an educational corporation of
New Jersey,

    Defendant-Respondent.

_____

Submitted May 11, 2020 – Decided June 4, 2020

Before Judges Geiger and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0891-18.

Rabner, Baumgart, Ben-Asher & Nirenberg, PC, and S. Micah Salb (Lippman, Semsker & Salb, LLC) of the Maryland bar, admitted pro hac vice, attorneys for appellant (Eugenie F. Temmler, of counsel; David H. Ben-Asher, of counsel and on the briefs; S. Micah Salb, on the briefs).

McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for respondent (James P. Lidon, of counsel and on the brief; Kelly R. Anderson, on the brief).

PER CURIAM

Plaintiff Raymond L. Capra appeals from a January 31, 2019 Law Division order denying his motion for summary judgment; a February 11, 2019 order granting summary judgment to defendant Seton Hall University (Seton Hall) dismissing counts one and two of Capra's complaint; and an April 12, 2019 order granting summary judgment to defendant dismissing count three of the complaint.[1] Capra argues the motion court erred in granting summary judgment because he presented prima facie evidence that Seton Hall breached its employment contract with him and acted in bad faith. We disagree and affirm.

I.

In 2006, Seton Hall hired Capra as a full-time instructor in the Classical Studies in the Languages, Literatures, and Cultures Department (the Department). The terms of Capra's employment were outlined in the Full-Time Faculty Member

---

[1] Plaintiff did not brief the dismissal of his claim for declaratory judgment (count three). We deem the issue waived and decline to address it. See Woodlands Cmty. Ass'n v. Mitchell, 450 N.J. Super. 310, 318-19 (App. Div. 2017) ("An issue not briefed on appeal is deemed waived." (quoting Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011))); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2020) (same).

Term Contract that both he and Seton Hall renewed annually. In 2010, Capra received a Ph.D. in Classical Philology. That same year, he was selected for a tenure-track position at Seton Hall as an Assistant Professor. Following the promotion, Capra signed a series of annual Full-Time Faculty Member Probationary contracts.

Each probationary contract required Capra to "apply for tenure not later than the fall semester of 2015." In the event he was not granted tenure, his employment would "automatically terminate on June 30, 2017." The contracts also stated that "[t]here is no automatic right to tenure. Tenure is conferred only by specific affirmative action by the University's Board of Regents." Each contract noted that Capra's position with Seton Hall was "subject to the Faculty Guide."

In the fall of 2015, Capra applied for promotion to the position of Associate Professor with tenure. Capra acknowledges that the Department's Policies and Procedures Regarding Applications for Promotion and Tenure impose the following minimum scholarly performance requirements: (1) at least four articles published or accepted in peer-reviewed journals and at least one additional scholarly article published; (2) a contract or manuscript pending publication; (3) at least five conference papers given; and (4) a clear research program laid out.

A-4053-18T2

Further, Capra acknowledges the standards, criteria, policies, and procedures pertaining to promotion and tenure are contained in Article 4 of Seton Hall's Faculty Guide. Under Article 4, three overarching factors would be applied in evaluating Capra's application: (1) teaching effectiveness; (2) scholarship; and (3) service to Seton Hall, the profession, and the community. Moreover, Capra had to demonstrate "four (4) years of full-time college or university teaching experience, evidence of teaching excellence, <u>scholarly publication, research, or other creative work in the appropriate discipline or field</u>" and "promotion to this rank rests on proven ability and accomplishments." (Emphasis added).

Capra's application was first considered by the Rank and Tenure Committee for the Languages, Literatures, and Cultures Department. There, Capra was recommended for promotion by an anonymous vote of fourteen to one. The dissenting voter noted Capra's limited publications, having "published only two articles for the book chapters in the fall of 2010 and in the spring of 2015." Another colleague, who voted to advance Capra's application, did so "[d]espite [Capra] having few publications." A colleague who voted in favor of the promotion expressed "considerable misgivings about [Capra's] scholarly record and promise," stating "two chapters in books (not even peer-reviewed articles) are not sufficient to merit tenure according to our Departmental standards." Another colleague stated, "I

4

wish he had a more active profile in scholarship."  The Chair of the Department supported Capra's promotion but noted "[w]hile several voters wished that Dr. Capra had been able to publish a bit more, only the lone dissenter felt that Dr. Capra's scholarship did not meet departmental requirements."

Next, Capra's application was considered by the Rank and Tenure Committee for the College of Liberal Arts and Sciences, which recommended Capra for promotion by an anonymous vote of seven to two.  One dissenting voter explained "Capra's research/scholarly productivity is not sufficient to warrant tenure and promotion to associate professor."  The other dissenting Committee member stated: "Unfortunately, [Capra's] scholarship output is low.  He only has produced [three] publications in the time since his hire:  one of these publications being a book review."  Another Committee member stated Capra has been "less productive" in his scholarship and had produced "not quite enough to meet the department's standards."

Under the Faculty Guide, the Dean of the College of Arts and Sciences submits a separate recommendation to the Provost.  The Dean recommended promoting Capra to Associate Professor but expressed the following concern, "I, like a few of his colleagues, lament his limited publications, albeit in substantial presses."

Capra's application was then submitted to the University Rank and Tenure Committee for review.  Under the Faculty Guide, the Committee issues its

recommendations to the Provost. The Committee recommended that Capra be promoted and granted tenure by a vote of eight to three.

Finally, Capra's application was submitted to Seton Hall's Provost. At the time, Dr. Larry A. Robinson served as the Provost and Executive Vice President. In his capacity as provost, Robinson was required by the Faculty Guide to consider each application for promotion and/or tenure after the applicant's department, College Rank and Tenure Committee, dean, and the University Rank and Tenure Committee had evaluated the application and provided their advisory recommendations. The prior recommendations were not binding meaning the provost could either endorse the application—thereafter referring it to the University's Board of Regents for consideration and approval—or deny it. A denial would be final unless "the application had been positively recommended by majority vote of the University Rank and Tenure Committee." In that case, "the decision of the provost is appealable to the president" by letter.

Robinson denied Capra's application. In a March 16, 2016 letter, Robinson advised Capra:

> I have carefully considered your application for Associate Professor with Tenure. This review has included my personal study of your application materials, as well as the recommendations of your department, dean, and University Rank and Tenure Committee.

6

> I regret to inform you that I am unable to recommend you for promotion to the rank of Associate Professor with Tenure. My decision is based on my evaluation of your performance as a faculty member according to the criteria, and only the criteria, set forth in Article 4.1-4.5 of the Faculty Guide, which states the standards in the areas of Teaching Effectiveness, Scholarship, and Service to the University, the Profession and the Community.
>
> I am appreciative of the contributions that you have made to Seton Hall.

Capra appealed Robinson's decision to Seton Hall's then President, Dr. A. Gabriel Esteban. In his letter to President Esteban, Capra surmised that the Robinson's denial was due to his "error in writing the application in that [he] underrepresented [his] scholarship as required under Faculty Guide 4.3b." He claimed this underrepresentation "led to a few negative evaluations of [his] scholarship and may have been a factor in the Provost's decision."

On April 8, 2016, President Esteban notified Capra that she would not overturn Robinson's decision, stating that "[a]fter careful consideration and reflection, I have decided to not grant your appeal to overturn the Provost's decision that you have not yet fully satisfied all criteria for the rank of associate professor with tenure as contained in Article 4-1 to 4.5."

A-4053-18T2

On February 6, 2018, Capra filed a three-count complaint alleging breach of contract (count one) and breach of the implied covenant of good faith and fair dealing (count two) based upon Robinson's purportedly generic denial letter. Capra also sought a declaratory judgment (count three) that he "satisfied the requirements of the Faculty Guide for promotion and tenure, and that [Seton Hall] is obligated to grant promotion and tenure to [Capra], retroactive to July 1, 2016," and award him back pay, lost benefits, punitive damages, interest, and costs.

Capra moved for summary judgment on counts one and two while Seton Hall cross-moved for summary judgment as to those same counts. The motion court heard oral argument on January 31, 2019.[2] It issued an oral decision and separate orders denying Capra's motion and granting Seton Hall's cross-motion.

Regarding Capra's breach of contract claim, the motion court found that he failed "to identify any contractual provisions that require [Seton Hall or Robinson] to provide detailed reasoning when denying an application for promotion to associate professor with tenure."[3] The court determined that Seton Hall was not

---

[2] The complaint did not allege that Seton Hall breached the contract by not providing annual evaluations of Capra. In addition, Capra made no such argument during oral argument before the motion court.

[3] The motion court did not consider Capra's late reply brief and opposition to Seton Hall's cross-motion, which were received by the court on January 30,

A-4053-18T2

obligated to promote Capra but "was [only] required to weigh certain criteria and follow certain procedures in evaluating his application for promotion," which it did. As to Capra's implied covenant of good faith and fair dealing claim, the motion court concluded that Capra could not "establish that . . . defendant acted pursuant to [an] improper motive or in bad faith in the evaluation of [his] application for promotion."

Seton Hall subsequently moved for summary judgment on count three. The motion court granted defendant's unopposed motion dismissing that count. This appeal followed.

Defendant raises the following points for our consideration:

> POINT I.  SETON HALL DENIED DR. CAPRA'S APPLICATION FOR PROMOTION WITHOUT REASON.
>
> A.  Seton Hall and Dr. Capra Formed a Contract.
>
> B.  Dr. Capra Fully Satisfied the Criteria for Promotion.
>
> 1. It is Undisputed that Dr. Capra Satisfied the Effective Teaching Requirement.
>
> 2. It is Equally Clear – and Undisputed – that Dr. Capra Satisfied the Record of Service Requirement.

---

2019, the day before the motions' return date.  See R. 4:46-1 (requiring reply briefs and opposition to cross-motions to be served and filed not later than four days before the return date).

3. Dr. Capra Has Proved Excellence in His Scholarship.

4. Tenure is Consistent with "the Needs of the Department or College."

C. The Provost Denied Dr. Capra's Application Without Reason.

D. Seton Hall Also Refused to Identify Any Reasons for the Provost's Decision During the Litigation.

POINT II. BY DENYING DR. CAPRA'S APPLICATION FOR PROMOTION WITHOUT EXPLANATION, SETON HALL BREACHED ITS CONTRACT WITH DR. CAPRA.

POINT III. SETON HALL IS FORECLOSED FROM ARGUING THAT DR. CAPRA'S JOB PERFORMANCE DID NOT MERIT PROMOTION.

POINT IV. THE PROVOST IS NOT EMPOWERED TO MAKE HIS DECISIONS BY FIAT.

POINT V. SETON HALL'S ARBITRARY DECISION CONSTITUTES A BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.

POINT VI. THE TRIAL COURT PLAINLY VIOLATED LAW BY GRANTING DEFENDANT'S CROSS-MOTION.

II.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the motion court. Townsend v. Pierre, 221 N.J. 36, 59

10

(2015) (citing Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)). That is, we "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (quoting R. 4:46-2(c)). "When no issue of fact exists, and only a question of law remains," a reviewing court "affords no special deference to the legal determinations of the trial court." Ibid. (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)).

### III.

We first address Capra's claim that the motion court erred by dismissing his breach of contract claim. We disagree.

A-4053-18T2

Capra argues "Seton Hall breached its contract with [him] because it cannot demonstrate that it evaluated [his] application for promotion according to the criteria stated in the" Faculty Guide. The motion court noted that Article 5.3 of the Faculty Guide "omits the provost from the listed individuals and bodies required to provide reasons for a recommendation." Thus, unlike the prior reviewers, the provost is only required to notify an applicant "of his action on the application," namely whether he endorsed or denied it. Robinson did just that, advising Capra that he was "unable to recommend [Capra] for promotion to the rank of Associate Professor with Tenure."

Capra states that he had written three book chapters and two book reviews; was working with another author to translate a book into English; delivered presentations at eleven academic conferences; and had various ideas for future research projects. However, despite Capra's accomplishments, several of his colleagues—both voting for and against Capra's promotion—cited his lack of academic work as his primary setback. Even the Dean acknowledged Capra's "limited publications."

The Faculty Guide makes clear that only advisory "recommendations" were garnered from the three Rank and Tenure Committees and the Dean. Robinson was free to endorse or deny it without relying upon faculty opinion.

A-4053-18T2

Neither Capra's self-serving representations regarding his academic credentials, nor the comments of colleagues in favor of promotion and tenure, suffice to create an issue of disputed material fact precluding summary judgment. See Molthan v. Temple Univ. of Com. Sys. of Higher Educ., 778 F.2d 955, 962 (3d Cir. 1985) (stating "the evidence as a whole must show more than a denial of tenure [or promotion] in the context of disagreement about the scholarly merits of the candidate's academic work, the candidate's teaching abilities or the academic needs of the department or university") (alteration in original) (quoting Zahorik v. Cornell Univ., 729 F.2d 85, 94 (2d Cir. 1984)); Sarmiento v. Montclair State Univ., 513 F. Supp. 2d 72, 89 (D.N.J. 2007) (finding "plaintiff's subjective belief he was more qualified for the job does not create an issue of fact for the jury") (quoting Dungee v. Ne. Foods, Inc., 940 F. Supp. 682, 689 (D.N.J. 1999), aff'd, 285 F. App'x 905 (3d Cir. 2008)); Harel v. Rutgers, State Univ., 5 F. Supp. 2d 246, 271 (D.N.J. 1998) (explaining that Faculty Appeal Board's recommendation for tenure and disagreement with the President, Vice President, and University's denial of tenure was insufficient to warrant grant of tenure), aff'd sub nom., Harel v. Rutgers, 191 F.3d 444 (3d Cir. 1999).

Capra also argues that Seton Hall "breached the contract by failing to provide [him] with the annual evaluations required by the contract." He claims "Seton Hall

A-4053-18T2

evaluated [him] only once during his five years of probationary service" and did not advise him of his progress toward tenure.

Capra's complaint, however, does not allege that Seton Hall breached the contract by failing to perform annual evaluations or contain any facts in support of that claim. Capra cannot amend the complaint through opposition to a dispositive motion. See Labree v. Mobil Oil Corp., 300 N.J. Super. 234, 236-37 (App. Div. 1997) (rejecting a plaintiff's fraud claim first raised in an opposing brief where the complaint did not allege fraud, the underlying facts for fraud were not pleaded, and plaintiff did not move to amend the complaint). Moreover, this argument was not argued before the motion court and was not decided on the merits. "[A]ppellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). Capra does not raise jurisdictional questions or matters of significant public interest.[4]

---

[4] In his reply brief on appeal, Capra concedes that Seton Hall's failure to conduct annual evaluations is not reviewable. Moreover, the record establishes that Capra was denied promotion and tenure due to inadequate scholarship not inadequate work performance, teaching effectiveness, or service to Seton Hall, the profession, and

Capra also argues that his employment contract with Seton Hall is illusory because "[u]nder [Seton Hall's] interpretation of the contract, [it] could never be held to its promise to evaluate tenure applications based on the criteria established by the" Faculty Guide. The record demonstrates, however, that Robinson's discretion was not "unfettered," as Capra claims. Instead, as provost, he was required to evaluate each application for tenure according to the Faculty Guide criteria and then to "notify each applicant of his action on the application." In his denial letter to Capra, Robinson stated that he based his decision upon Articles 4.1 to .5, "which states the standards in the areas of Teaching Effectiveness, Scholarship, and Service to the University, the Profession and the Community." Robinson certified that he "conducted [his] own independent review and analysis" of Capra's application, which was "extensive, rigorous and contemplative." Ultimately, he concluded that "Capra's record as a whole did not evidence sufficient proven ability and

___

community. In any event, the minimum requirements for adequate scholarly performance are set forth in Department Policies and the Faculty Guide. Capra does not claim he was unaware of those requirements nor does he claim that annual evaluations were necessary to inform him whether he met those requirements. He merely argues that annual evaluations were not performed in four of his five probationary years. For these reasons, we decline to consider this issue.

accomplishments during his probationary period to merit a promotion to Associate Professor with the accompanying award of lifetime tenure."

In any event, Robinson's decision was not final because Capra appealed to President Esteban, who could have reversed it. The record also indicates Capra later pursued reconsideration by interim President, Mary J. Meehan, who responded:

> In your request to me for reconsideration, you offer only your own disagreement with the academic judgments of both the former Provost and former President. Essentially, you are asking me to consider substituting my judgment for the judgment of my predecessor and the former Provost. This I cannot do -- your personal disagreement (and the several letters of support from former students and one of your own professors) is not a basis to revisit the substantive and reasoned decisions made before my arrival at the University. Indeed, both under the Faculty Guide and through your attorney, you have been provided with ample opportunity to explain and advance your application and dispute any aspect of the decisions by Drs. Robinson and Esteban. Consequently, not only have you exhausted all appeals under the Faculty Guide, but you present no basis for reconsideration.
>
> [(Emphasis omitted).]

The contract was not illusory; it provided further review of the provost's decision to deny an application for promotion and tenure, which Capra availed himself of.

A-4053-18T2

IV.

Finally, Capra argues Seton Hall breached the implied covenant of good faith and fair dealing by denying his "application without stating any facts, reasons, or analysis for the decision—indeed, without even proof that the [P]rovost considered the application on its merits—it acted capriciously and it breached the covenant of good faith and fair dealing." We are unpersuaded by this argument.

The implied covenant of good faith and fair dealing is "a component of every contract." Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 109 (2007). "'Good faith' entails adherence to 'community standards of decency, fairness or reasonableness.'" Id. at 109-10 (quoting Wilson v. Amerada Hess Corp., 168 N.J. 236, 245 (2001)). It "requires a party to refrain from 'destroying or injuring the right of the other party to receive' its contractual benefits." Id. at 110 (quoting Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224-25 (2005)). Accordingly, to succeed on this claim a plaintiff must demonstrate a defendant's "bad motive or intention." Ibid. (quoting Brunswick Hills, 182 N.J. at 225).

The motion court concluded that Capra could not establish Seton Hall acted with an "improper motive or in bad faith in the evaluation of [Capra's] application for promotion." The court found that the contractual "process and procedure were followed, event to the extent that after this [P]rovost denied him, he followed the

next process, which was an appeal, and was addressed by the [P]resident, who had the right and the authority to overrule the [P]rovost and did not."

A party opposing summary judgment cannot merely rely on unsupported allegations in its pleadings. See Pressler & Verniero, cmt. 2.2 on R. 4:46-2 ("[B]are conclusions in the pleadings without factual support in affidavits will not defeat a motion for summary judgment." (Citations omitted)).

During discovery, Capra elected not to take any depositions. As a result, there is no testimony impeaching Robinson or President Esteban, which might have lent credence to his bad faith claim. The motion record contains no other evidence of any improper motive or intention.

As the motion court noted, the record demonstrates that Seton Hall provided Capra with the proper procedures and notice for promotion that were contractually afforded to him by the Faculty Guide. Capra has not demonstrated a prima facie case for a breach of the implied covenant of good faith and fair dealing. See Wilson, 168 N.J. at 251 (holding that bad motive or intention is an essential element of a breach of the implied covenant of good faith claim).

Additionally, Seton Hall presented Robinson's certification, explaining that he engaged in an "independent," "extensive," "rigorous," "contemplative," and

18

"thorough review" of Capra's application and his decision to deny it came after "careful deliberation." Robinson also noted the following:

> I understand that Dr. Capra now asserts that my decision not to endorse his application to the University's Board of Regents represents bad faith conduct on my part that resulted in a breach of contract by the University. Those allegations reflect both a dramatic change and deviation from Dr. Capra's previously-stated acceptance of responsibility for the denial of his application [detailed in his March 21, 2016 letter to President Esteban] and a troubling lack of candor. . . . It is noteworthy that Dr. Capra did not accuse me of failing to review his application until after Dr. Esteban denied his appeal. . . .

In sum, although Capra claims that Robinson and Seton Hall reviewed his application in bad faith, his "[b]are conclusions in the pleadings without factual support in tendered affidavits, will not defeat a meritorious application for summary judgment." Cortez v. Gindhart, 435 N.J. Super. 589, 606 (App. Div. 2014) (quoting Brae Asset Fund, L.P. v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999)). It was Capra's burden, in response to Seton Hall's motion for summary judgment, to present evidence demonstrating there is a genuine issue of material fact for trial. Brill, 142 N.J. at 528-29; Pressler & Verniero, cmt. 2.2 on R. 4:46-2. He failed to do so. Accordingly, the court properly granted summary judgment dismissing count two.

Capra's remaining arguments are without sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4053-18T2